Saul S. Streit, J.
Plaintiff moves (1) to dismiss the second and fourth defenses as insufficient in law, (2) to dismiss the third defense as insufficient, or, in the alternative, to require defendants to make the same more definite and certain, and (3) to vacate a notice to take plaintiff’s testimony before trial. Defendants claim that the complaint is insufficient and that *835 plaintiff’s motion must, therefore, be denied under the rule that a motion to dismiss defenses searches the record and must be denied if the complaint fails to state a good cause of action (Teller v. Prospect Heights Hosp., 280 N. Y. 456, 458).
Plaintiff, in his first cause of action, alleges that he is and has been a radio and television artist and a lecturer, as well as an officer of the New York local of the American Federation of Television and Radio Artists, hereinafter referred to as ‘ ‘ AFTBA ’ ’; that defendants published various documents, of and concerning plaintiff, which meant, were intended to mean, and were understood to mean that plaintiff was and is a Communist, or a pro-Communist and a fellow traveler, and a participant in a current infiltration by the Communist party into the field of entertainment-communications, and that he is opposed to the fundamental anti-Communist principles of AFTBA.
In Mencher v. Chesley (297 N. Y. 94, 101) our Court of Appeals held that a false charge that one is a Communist is libelous and that “it is of little moment whether the statement describes plaintiff as a communist or as one having communistic sympathies and affiliations, for, * * * ‘ any difference is one of degree only ’. (Grant v. Reader’s Digest Assn., supra, p. 735, per Learned Hand, C. J.) ” In that case, the article complained of had stated that the plaintiff was a former Daily Worker employee who had been campaign manager for a Communist candidate for public office. The court, recognizing (p. 99) that “ there was no direct charge that plaintiff was a communist or had communist affiliations ”, nevertheless declared that the statements in the article were “ susceptible of such a construction ”. The court said (p. 99): “the assertion that plaintiff had formerly been employed by the Daily Worker, generally known to be the official publication of the Communist Party, and that he had acted as campaign manager for .a communist seeking public office, may reasonably be understood as a charge that plaintiff was either a communist or that he co-operated in communistic activities and associated with communist figures.”
In the instant case, Exhibit A, made part of the complaint as one of the articles published by defendants, states that plaintiff was one of the “ middle of the road ” slate of officers elected by AFTBA a short time earlier, and that plaintiff had been quoted as saying that “ all (middlers) were chosen for their opposition to Communism.” It goes on to say: “ In most cases, this may well be true. But how about Faulk (plaintiff) himself ? What is his public recordl” The article then continues with a detailed *836 recital of (1) plaintiff’s appearance at a club which is “A favorite site of pro-Communist affairs ”, (2) plaintiff’s appearance as an entertainer at a function sponsored by an organization “ officially designated a Communist front”, (3) plaintiff’s contribution of material for a show staged by another organization, also “ officially designated a Communist front ”, (4) the listing of plaintiff’s name as a scheduled entertainer on the program of another “ officially designated * * * Communist front ”, (5) the naming of plaintiff, in a bulletin issued by another “ officially designated * * * Communist front ” as one who had sent greetings on the second anniversary of the organization, (6) the listing of plaintiff’s name as an entertainer at a function to be held at a school “ found by the Federal Government to be what it is, the official training school of the Communist conspiracy in New York ”, and (7) plaintiff’s appearance as a sponsor of a meeting, later described by the House Committee on Un-American activities as “ another phase in the Communist world ‘ peace ’ campaign. ’ ’ The article then asks: “ Will John Henry Faulk, an AFTRA V.P., discharge his responsibility to enforce the AFTRA constitutional amendment and National Rule against Communists? ”
In the court’s opinion, the enumeration of plaintiff’s various types of participation in activities sponsored by Communist front organizations and the statements regarding the listing of plaintiff’s name, as a scheduled entertainer, in the programs of functions held by other such organizations, may reasonably be understood as charging that ' ‘ plaintiff was either a communist or that he co-operated in communistic activities and associated with communist figures ” (Mencher v. Chesley, supra, p. 99). This is all the more true, in view of the statement in the article which, after acknowledging that Faulk’s statement that the “middlers” were chosen for their opposition to Communism “ may well be true ” “ in most cases ”, goes on to say: “ But how about Faulk himself? What is his public record? ”, thus expressing doubt or disbelief that Faulk’s statement was true as applied to Faulk, himself. In the court’s opinion, the contents of the article, assuming they are untrue, as alleged in the complaint, defame and libel plaintiff.
The recent decision of the Court of Appeals in Julian v. American Business Consultants (2 N Y 2d 1), is not authority to the contrary. In that case, the only references to the plaintiff therein were found on one page of a book of 213 pages. Plaintiff was listed as having spoken, in 1942, at a meeting of Artists’ Front to Win the War, and as having attended a meeting, many *837 years later, whose purpose was to abolish the House Un-American Activities Committee. The Court of Appeals declared (p. 17) that “ the listing of attendance of Julian at only two meetings widely separated * * * in itself does not support the plaintiff’s charge that it was the intention of the book to cast him as a ‘ sympathizer ’, ‘ dupe ’, ‘ tool ’ or ' sucker ‘ colonist ’ or other so-called objectionable terms. This participation at Communist front meetings fell far short of that activity necessary to be classified as a ‘ sympathizer ’, ‘ dupe ‘ tool ’, ' sucker ’ or ‘ fellow-traveler ’. The terms ' dupe ’, ‘ sucker ’, ‘ sympathizer ’, ' tool ’, or ' fellow-traveler ’ and other so-called objectionable terms as used in this book clearly connote a regular and continuous use of the presence and talents of an individual. The references to plaintiff, when read together with the introduction and purpose statement of Part II, are not susceptible of a libelous interpretation.” The last sentence of the foregoing quotation related to the statement in Part II of the book that “many prominent actors and artists have been inveigled to lend their names * * * to organizations espousing Communist causes * * * regardless of ivhether they actually believe in, sympathise with, or even recognise the cause advanced.” (Italics supplied.) The " purpose statement of Part II mentions ' innocents ’, ' well-intentioned liberals ’, persons who ‘ advanced Communist objective with complete unconsciousness ’, ' genuine liberals ’ ”, The court pointed out (p. 6) “ There is no allusion in the book, containing 151 names, to indicate in which, if any, of the categories the plaintiff belongs. It does show he was not in the category of a member of the Communist party.” In the instant case, there are many more references to participation by the plaintiff in Communist front activities and functions than there were in the cited case, and there is absent a statement, similar to that contained in Part II of the book involved in the cited case, indicating that the references to plaintiff might have been intended to refer to him as a person who advanced the Communist cause innocently and without realizing it. On the contrary, Exhibit A is expressly directed against plaintiff, by name, as one whose record of participation in Communist front functions and affairs is such as to discredit his statement that he is opposed to Communism.
The court accordingly holds that a good cause of action in libel is stated. In the circumstances, it is unnecessary to consider whether Exhibits B and C are likewise actionable. They are all made part of what is pleaded as a single cause of action.
*838 The second defense to the first cause of action is one of truth, i.e., justification. The defense is clearly insufficient. Apart from the fact that it attempts to assert the truth of the statements made in only one of the articles complained of in the first cause of action, there is the more serious defect that the defense contents itself with the conclusory and omnibus assertion that all the statements of fact contained in said article are true. No attempt is made to state affirmatively the particular facts claimed to be true. As the Court of Appeals said in Bingham v. Gaynor (203 N. Y. 27, 34), “A general allegation charging a person with something that is libelous per se cannot be successfully answered by a general allegation in the answer that the charge is true.” (See, also, Wachter v. Quenzer, 29 N. Y. 547; Meyers v. Huschle Bros., 273 App. Div. 107, 109; Macaulay Co. v. Winchell, 259 App. Div. 300.)
The third defense to the first cause of action is one of fair comment. Such a defense, to be good, must show that all the factual statements in the article claimed to be libelous were true and that the comments thereon, also contained in the article, constituted fair comment. (Foley v. Press Pub. Co., 226 App. Div. 535, 543, 544; Seelman on Libel and Slander, p. 234.) In the cited case, the defense of fair comment repeated the allegations of the defense of justification (p. 543) and, in addition to pleading, in detail, the particular facts claimed to be true, contained further allegations that the expressions of opinion included in the article were fair comment. The third defense in the instant case, however, fails to state the facts claimed to be true and, indeed, fails even to state what are claimed to be the true facts and what is claimed to be fair comment thereon. The defense is insufficient. The case of Julian v. American Business Consultants (supra) has no application here, for that case was decided after trial and did not involve any question as to the sufficiency of a defense of fair comment from a pleading standpoint.
The fourth defense to the first cause of action attempts to plead a privilege not heretofore recognized by any authorities on the law of libel, either judicial or text. The privilege of fair comment, relied upon in the third defense, sufficiently protects defendants if their comments were fair and based upon facts truly stated. If their comments were not fair, or were not based upon facts truly stated, they are not entitled to a defense of privilege on the basis of the facts alleged.
The second cause of action is for “ prima facie tort ”. It charges defendants with having damaged plaintiff by conspiring *839 to injure him and by publishing the defamatory matter contained in the exhibits incorporated in the first cause of action as part of said conspiracy, as well as other similar statements regarding plaintiff. It is alleged that the defendants were actuated by actual malice (see Al Raschid v. News Syndicate Co., 265 N. Y. 1, 4). A cause of action for a “ prima facie tort ” must, however, contain allegations of special, as distinguished from general damages. (Brandt v. Winchell, 283 App. Div. 338, last full par. p. 342; Rager v. McCloskey, 305 N. Y. 75, 80.) Allegations of special damage must state specifically and with particularity the items of loss claimed by the plaintiff, giving the names of the employers, customers or others who are claimed to have taken away their business from plaintiff. (See 2 Abbott’s Forms of Pleading, n., p. 1467; Clark on New York Law of Damages, § 771; Reporters’ Assn. v. Sun Print. & Pub. Assn., 186 N. Y. 437, 443.) In the cited case the court said (p. 443): “particularity in such a case is both proper and necessary ”. The second cause of action is lacking in the necessary definiteness and particularity required where special damages must be relied on and pleaded. It follows that the motion, insofar as it seeks to strike out defenses to the second cause, must be denied (Teller v. Prospect Heights Hosp., supra).
To the extent that plaintiff applies to vacate the notice of examination, the motion is granted. The notice was served less than 30 days after the last joinder of issue and was, therefore, premature (New York County Supreme Ct. Trial Term Eules, rule XI), it not appearing that there “ is reason for proceeding without first affording the adversary party time within which to elect to make motions addressed to the pleadings.” This disposition is without prejudice to the service of a new notice after the expiration of the 30-day period.
The motion is granted to the extent of dismissing the second, third and fourth defenses to the first cause of action as insufficient, and vacating the notice of examination. The alternative relief applied for as to the third defense to the first cause is denied as academic. The motion is, however, denied insofar as it seeks to dismiss defenses to the second cause of action. Defendants may serve an amended answer within 20 days from the service of a copy of this order with notice of entry. If plaintiff wishes to amend his second cause of action he may do so within 10 days from the service of a copy of this order with notice of entry.