STEPHEN PEABODY, JR., & CO., INC., Appellant, *v.*
THE TRAVELERS INSURANCE COMPANY, Respondent.

Contract — insurance — action by insurance brokers to
recover from insurance company damages for breach of con-
tract as to issuance of insurance policy and amount of pre-
miums — when complaint does not state facts sufficient to
constitute a cause of action — workmen's compensation insur-
ance — agreement to issue policy at rate less than that fixed
by Compensation Inspection Rating Board illegal and unen-
forcible.

1. The Workmen's Compensation Law requires every insurance
corporation or association authorized to transact business in this
State, which insures employers against liability for compensation
under the law, to file with the Superintendent of Insurance its classi-
fication of risks and premiums together with basis rates and schedules,
which must be approved by the Superintendent, before they can become
effective; hence, where an agreement was made between plaintiff, an
insurance broker, and defendant, an insurance company, that the
latter would issue and carry a policy of workmen's compensation insur-
ance for a customer of the plaintiff at premium rates not to exceed
a certain amount, notwithstanding premium rates be thereafter fixed
by the Compensation Inspection Rating Board and approved by the
Superintendent of Insurance might be higher, such agreement was
illegal and void.

2. This action is brought by plaintiff upon a complaint which alleges
that defendant broke the agreement not to increase the insurance
rates and by a writing, delivered to plaintiff's customer, represented
in substance that plaintiff's acts in respect to the delivery to its cus-
tomer of the insurance policy in question and with respect to the agree-
ment that the premium rates therefor would not exceed a certain
amount for the policy year, was dishonest and untruthful on the part
of plaintiff; and that defendant thereby intended to, and did, knowingly
and falsely convey the meaning that defendant had not agreed with
plaintiff and its customer that the premium rates on said policy for
the said policy year should not exceed a certain amount; plaintiff
claiming that defendant by this conduct injured the plaintiff's business
as an insurance broker and its relations with its customers. The
action cannot be sustained; the complaint fails to establish a cause of
action or any wrong recognized by the law.

3. If defendant deliberately broke its contract, such breach did not constitute an actionable wrong. Furthermore, plaintiff is supposed to know the law as well as the defendant and if the latter had no right under the insurance laws to fix a rate of premium not acceptable to the insurance authorities, the plaintiff would have no right to procure from defendant a contract so to do Such a contract would be illegal as one made in contravention of the laws of the State of New York.

*Peabody, Jr., & Co., Inc.,* v. *Travelers Ins. Co.,* 210 App. Div. 261, affirmed.

(Argued June 10, 1925; decided July 15, 1925.)

Appeal from a judgment, entered July 19, 1924, upon an order of the Appellate Division of the Supreme Court in the first judicial department, which reversed an order of Special Term denying a motion to dismiss the complaint and granted said motion.

*Julian S. Eaton* and *Sam L. Cohen* for appellant. The amended complaint states a cause of action. (*Glanzer* v. *Sheppard,* 233 N. Y. 236; *Rich* v. *N. Y. C. & H. R. R. R. Co.,* 87 N. Y. 382; *Posner* v. *Jackson,* 223 N. Y. 325; *Wood* v. *Duff-Gordon,* 222 N. Y. 88; *Oppenheim* v. *Kridel,* 236 N. Y. 156; *Oliver* v. *Perkins,* 92 Mich. 317; *Kennedy* v. *Woolworth Co.,* 205 App. Div. 648; *Attleboro Mfg. Co.* v. *Frankfort M. A. & P. G. Ins. Co.,* 240 Fed. Rep. 573; *Rice* v. *Manley,* 66 N. Y. 82; *Hynes* v. *N. Y. C. R. R. Co.,* 231 N. Y. 229.)

*William J. Moran* for respondent. The amended complaint does not state facts sufficient to constitute a cause of action. (*People* v. *Danihy,* 63 Hun, 579; *Battersby* v. *Collier,* 34 App. Div. 347; *McNamara* v. *Goldan,* 118 App. Div. 221; *Lyons* v. *Scriber,* 174 N. Y. Supp. 332; *Greeff* v. *Eq. L. Assur. Society,* 160 N. Y. 29; *Gminder* v. *Zeltner Brewing Co.,* 126 App. Div. 776; *Bogardus* v. *N. Y. Life Ins. Co.,* 101 N. Y. 328; *Blum* v. *Whitney,* 185 N. Y. 242; *Gilbert Paper Co.* v. *Prankard,* 204 App. Div. 83; *Dalury* v. *Rizenas,* 183 App. Div. 459; 229 N. Y. 513; *Beardsley* v. *Kilmer,* 236 N. Y. 91; *Turner* v. *Fulcher,* 165 N. Y. Supp. 283.) In no view of the facts stated anywhere in the

papers on appeal has appellant a cause of action herein. The "writing" complained of was not willful, wrong nor malicious; but is a fair statement of respondent's understanding of the law. (*Ashcroft* v. *Hammond,* 197 N. Y. 488; *Bingham* v. *Gaynor,* 203 N. Y. 27; *Beardsley* v. *Kilmer,* 236 N. Y. 80; *Ives* v. *S. B. R. R. Co.,* 201 N. Y. 271; *Jensen* v. *Southern Pacific Co.,* 215 N. Y. 514; *Wyatt* v. *Wanamaker,* 58 Misc. Rep. 429; *Kolel* v. *Eliach,* 29 Misc. Rep. 499.)

CRANE, J. The plaintiff, a domestic corporation engaged in the insurance brokerage business, commenced an action against the defendant, a Connecticut corporation authorized to do business in the State of New York, which its attorney has been pleased to call an action analogous to interfering with trade or calling. On a previous appeal from a motion to strike out portions of the complaint the Appellate Division (206 App. Div. 206) required the plaintiff to serve an amended complaint separating its causes of action. It is the amended complaint which is before us. The Special Term denied the defendant's motion to dismiss the amended complaint as insufficient on the face thereof. The Appellate Division has reversed and granted the motion. Does this amended complaint set forth a cause of action?

Counsel for the plaintiff on the argument and in his brief has assumed that the courts are reluctant to sustain a complaint setting forth a novel cause of action, or one that finds no precedents in the books. Personally, I have recognized no such reluctance on the part of any of the courts in recent years. If there be a wrong which the law recognizes as such and which it is possible or practical for the courts to redress, the readiness to find a remedy has been manifested. New conditions and new circumstances are constantly arising.

The difficulty with the plaintiff's situation here is not

33

its novelty; it is its failure to suggest any wrong which the defendant has done to the plaintiff. When we speak of wrong, we recognize that the word has a much narrower and more limited meaning in jurisprudence than it has in morals. The defendant's conduct may have offended the plaintiff; it may have been mean or selfish; it may have been below the business standards maintained among insurance men and insurance companies; it may have deprived the plaintiff of a customer; but unless the word spoken and the things done amount to a wrong serious enough for the law to take hold of and redress there is nothing to set the courts in motion.

What is it that the plaintiff charges the defendant with having done? The New York Dock Company was a customer or client of the plaintiff's pertaining to Workmen's Compensation Insurance. The defendant, as has been stated, was a Connecticut corporation authorized to carry on the business of such insurance in the State of New York.

Workmen's Compensation Insurance is regulated by the law of this State. Section 67 of the Insurance Law (Cons. Laws, ch. 28) provides as follows:

" Sect. 67. Approval of premium rates. Every insurance corporation or association, except the state insurance fund as administered by the state workmen's compensation commission, authorized to transact business in this state, which insures employers against liability for compensation under the workmen's compensation law, shall file with the superintendent of insurance its classification of risks and premiums relating thereto, and any subsequent proposed classification of risks and premiums, together with basis rates and schedules, if a system of schedule rating be in use, none of which shall take effect until the superintendent of insurance shall have approved the same as adequate for the risks to which they respectively apply. The superintendent of insurance may withdraw his approval of any premium rate or schedule made

by any insurance corporation or association if, in his judgment, such premium rate or schedule is inadequate to provide the necessary reserves."

The defendant insurance company was required to file with the Superintendent of Insurance its classification of risks and premiums together with basis rates and schedules, if a system of schedule rating be in use. The premium and the basis rates and schedules must be approved by the Superintendent of Insurance. Section 141 of the Insurance Law recognizes the existence of rate-making associations and provides for their supervision by the Superintendent of Insurance. Every such association is to file with the Superintendent of Insurance its schedule of rates whenever called for.

In 1922 and 1923 (Laws of 1922, chap. 660, sect. 2; Laws of 1923, chap. 436, sect. 2) section 141 was amended and section 141-b added so as to require insurance companies to comply with the rates adopted by the rate-making organizations, and making it an offense for brokers or insurance companies to deviate from the rates so fixed. These provisions, however, were not in the Insurance Law as it existed in 1919 and in 1920, the times mentioned in the complaint. However, the premiums charged by the defendant and the rate basis or schedules adopted by it required the approval of the Superintendent of Insurance according to section 67 of the Insurance Law as it then existed. If the defendant were a member of a rating organization recognized by section 141 of the law as it existed in 1919 and 1920, the rates of such association would have to meet with the approval of the Superintendent of Insurance before they could become effective.

The complaint alleges:

" *Sixth*. Upon information and belief that said New York Dock Company on or about May 15, 1919, requested plaintiff as broker to submit to said New York Dock Company, renewal rates on workmen's compensation

insurance to cover certain risks and liabilities of New York Dock Company. That prior to June 15, 1919, it was known to plaintiff, defendant and said New York Dock Company that renewals of workmen's compensation insurance were generally issued at a certain base rate which was subject to subsequent revision as to experience. That plaintiff and defendant thereupon established a custom, dealing and practice between plaintiff as broker, and defendant as insurer, covering the New York Dock Company's workmen's compensation insurance whereby, in order to permit the said New York Dock Company to know in advance that its premium rates would not exceed a certain amount, defendant agreed with plaintiff that it would write a policy for New York Dock Company at rates not to exceed a certain amount, notwithstanding premium rates thereafter to be fixed by the Compensation Inspection Rating Board might be higher. Thereupon and in accordance with such practice and agreement, defendant wrote said policy for the year commencing June 15, 1919, and plaintiff delivered same to the said New York Dock Company."

As to the year 1920 it alleges:

" Tenth. That thereafter and prior to June 30, 1920, defendant duly agreed with plaintiff that said last named policy should be retained by the said New York Dock Company and should become binding and effective, pursuant to the custom, dealing and practice between plaintiff and defendant hereinabove more fully set forth, defendant particularly and specifically agreeing that its premium rates to be charged said New York Dock Company for the policy year beginning June 30, 1920, would not exceed a certain fixed, definite and named amount, notwithstanding any subsequent revision of rates by the Compensation Inspection Rating Board of the State of New York, except that if said Compensation Inspection Rating Board would provide lower premium rates than those expressed in the said policy for the policy year

beginning June 30, 1920, the defendant would give the said New York Dock Company the benefit of said lower premium rates."

The gist of the complaint is that the defendant contracted with the plaintiff and the New York Dock Company that its premium rates would not exceed a certain fixed and definite amount, notwithstanding any subsequent revision of rates by the Compensation Inspection Rating Board of the State of New York.

Here was a contract clearly against the spirit if not the letter of the law. Insurance rates for premiums and basis rates and schedules were to be fixed by the State Insurance Department and not by the defendant. It was the duty of the Superintendent of Insurance to see that the rates and premiums were adequate to protect the employees insured and to preserve and provide the necessary reserve funds for this purpose. It was impossible for the defendant to fix a rate or to contract to fix a rate which did not have the approval of the State authorities. As the Insurance Law recognizes the rating association, it is to be presumed that the rates and schedules fixed by such an association within the State of New York were properly adjusted to the risks, and met with the approval of the Superintendent of Insurance who was given supervision over them. A contract to disregard an increase in such rates or basis rate, and to ignore the disapproval of the rating association, and, therefore, of the Superintendent of Insurance, was against public policy and void.

The grievance which the complaint sets forth is that the defendant broke this alleged contract not to increase the insurance rates for the year 1920, thus injuring the plaintiff's (the broker's) business and its relations with its customer. It is said in the complaint that the defendant, " * * * on or about March 17, 1921, in a writing delivered by defendant to the New York Dock Company, falsely, wilfully, wrongfully and maliciously

represented to the said New York Dock Company that the treatment received by said New York Dock Company from plaintiff with respect to the delivery to the said New York Dock Company of said policy covering the policy year beginning June 30, 1920, and with respect to the said agreement that the premium rates therefor would not exceed a certain amount for the said policy year, was in fact unethical, dishonest, not truthful and wanting in business integrity upon the part of plaintiff; that defendant in said writing intended to and did, knowingly and falsely convey the intent and meaning that it had not agreed with plaintiff and with the said New York Dock Company that the premium rates on said policy for the said policy year should not exceed a certain amount."

The plaintiff disclaims that this action is one for libel. The counsel in his brief frankly states that the letter written by the defendant to the New York Dock Company will not sustain such an action. Wherein then is the wrong which the law recognizes?

If the defendant made a contract to insure the New York Dock Company for a certain premium for the year 1920 and agreed not to change the rate, the agreement, *if legal,* could be enforced by the New York Dock Company. If the defendant deliberately broke its contract, such breach did not constitute an actionable wrong in behalf of the agent who had procured the insurance. He would be entitled to his commission and that is all. Should the insurance company claim that its contract was made without authority, the question of authority could be tried out in an action by the New York Dock Company. Whichever way the question was decided, the insurance agent would have no cause of action, although he might lose his commission or suffer in his reputation for business acumen and judgment, should the contract have been made without proper authority on behalf of the insurance company's agents.

On the other hand, the insurance broker is supposed to know the law as well as the insurance company, and if the latter had no right under the insurance laws to fix a rate of premium not acceptable to the insurance authorities, the broker would have no right to procure from it a contract so to do. In other words, the insurance company could not agree with its insured that the premium rate fixed by it would not be changed, when the rate-making association under the laws of the State of New York demanded a higher rate. Such a contract would be illegal as one made in contravention of the laws of the State of New York. The insurance company having made such a contract could not be held to it and would violate no right of the insurance broker by repudiation. The law favors obedience to its statutes rather than the keeping of contracts in violation of them. The law does not recognize that as a breach which is in obedience to a statute. Whatever may have been the motives of the defendant in repudiating the rates for 1920 was entirely immaterial. Even if it acted wilfully and maliciously, as the plaintiff alleges, it would not be liable provided it had a just and rightful purpose to serve. (*Beardsley* v. *Kilmer*, 236 N. Y. 80.) There was here no such contract between the plaintiff and the New York Dock Company as existed in *Posner Co., Inc.*, v. *Jackson* (223 N. Y. 325).

However we may view the claim put forth by the plaintiff, we cannot see that it has stated a cause of action or alleged any wrong recognized by the law. The judgment dismissing the complaint should, therefore, be affirmed, with costs.

HISCOCK, Ch. J., CARDOZO, MCLAUGHLIN, ANDREWS and LEHMAN, JJ., concur; POUND, J., absent.

Judgment affirmed.