Chief Judge Conway.
The present appeal is taken by the plaintiff from an Appellate Division judgment which (1) reversed an order of Special Term denying the motion of defendant Elmer H. Bobst to dismiss the amended complaint as insufficient in law as against said defendant, (2) granted the motion and (3) dismissed the amended complaint as against said defendant, without leave to replead.
Two causes of actions are pleaded. The first cause, asserted against Winchell alone, charges Winchell with having committed certain alleged tortious acts. The second cause, asserted against Winchell, Bobst and Teeter, charges that the same alleged wrongful acts by Winchell were performed in pursuance of a conspiracy among Winchell, Bobst and Teeter,
*631 Essentially, the first cause asserts that the defendant Winchell, who is a well-known newspaper reporter, columnist and radio commentator, is actively engaged in soliciting funds for a corporation named “Damon Runyon Memorial Fund for Cancer Research, Inc.”, which is represented to the public by Winchell as being an organization engaged in collecting funds to be expended by it exclusively upon scientific research into causes and cures of cancer; that in or about October, 1949 plaintiff became active with certain other persons in organizing and operating a membership corporation under the name “ Cancer Welfare Fund, Inc.”, whose purpose it was to collect funds from the public to be used as a welfare aid for needy victims of cancer, to aid them with their medical bills, to assist their dependents and generally to render financial assistance to them in appropriate fashion; that from in or about January, 1950 to in or about October, 1953, defendant Winchell, with the deliberate intention of harming the plaintiff, embarked upon and carried through to completion a wanton and malicious plan to destroy Cancer Welfare Fund, Inc., and to harass, embarrass and destroy plaintiff so cruelly and utterly as to make it impossible for him ever again to participate in any similar activity; that the defendant’s purpose was to eliminate Cancer Welfare Fund, Inc., and plaintiff as competitors of the Damon Runyon Fund; and that in furtherance of his plan and scheme defendant Winchell did
(1) “instigate, and prevail upon governmental officials to conduct, baseless but harassing investigations of plaintiff and Cancer Welfare Fund, Inc. by the Attorney General of the State of New York, the District Attorney of the County of New York, the United States Post Office and the United States Attorney’s office, all with the purpose and effect of tying up the books and affairs of Cancer Welfare Fund, Inc. and of destroying public confidence in plaintiff and in it to such an extent that they could no longer function, and to such further extent that plaintiff, in order to terminate and escape from the coercive and oppressive tactics of defendant Winchell, entered into a written agreement with the Attorney General of the State of New York which was legally unwarranted, unjustified, unnecessary and factually unfounded, that upon the concomitant dissolution and annulment of the corporate existence of Cancer Welfare Fund, Inc. plaintiff would be enjoined and restrained from at any time in *632 the future engaging in the business of soliciting charitable contributions. ’ ’
(2) “foment and cause to be instigated a criminal action against plaintiff, and did create bias and prejudice against the plaintiff to such an extent that upon the first trial thereof a conviction was rendered against plaintiff which was subsequently reversed upon appeal on the ground that the trial court had not accorded him an impartial or fair trial and which said criminal action was subsequently dismissed as the result of- a verdict of acquittal by the jury upon the second trial thereof.”
(3) “ prevail upon ” the Police Department and the commissioner of licenses to cancel plaintiff’s pistol permit and detective’s license, and such cancellations were made “ without reasonable or proper basis and merely in compliance with the wishes of said defendant Winchell.”
(4) “utter and publish orally and in nationally circulated printed publications and in nationally broadcast radio programs, and did cause others to utter and publish, false accusations against plaintiff attacking his professional and business integrity and competency, and lowering him in the esteem of the public with regard to his professional and business reputation, including accusations that plaintiff had been guilty of fraud, embezzlement, cheating, dishonesty, thievery, incompetency in his fields of livelihood, that he was a convict, that he had been convicted of embezzlement, that he had been convicted of diverting for his own benefit almost all of the contributions which had been made to Cancer Welfare Fund, Inc., for welfare purposes, and various other false accusations of a similar nature. ’ ’
Plaintiff claims that as a result of the afore-described actions of Winchell he has been ‘ ‘ deprived from 1950 to date of earnings of $200 or more per week, and of the benefits of a contract of employment with Cancer Welfare Fund, Inc. at the said rate of compensation extending to 1955, and of the benefits of a continuing commercial relationship with said employer; his ability to earn a livelihood has been destroyed; his previously excellent professional and business reputation has been utterly demolished; he has been needlessly and improperly compelled to subject himself to an injunction against engaging in a legitimate and proper field of business activity for which he is trained, experienced and competent, and plaintiff has, by virtue *633 of the foregoing been damaged in the amount of $350,000 and is further entitled to recover from defendant Winchell punitive damages in the amount of $500,000.”
The second cause of action repeats the allegations of the first and goes on to allege that the wrongful acts charged against Winchell were committed pursuant to a conspiracy with the defendants Bobst and Teeter.
Plaintiff contends that the averments of his complaint spell out a cause of action for “ prima facie tort ”, that is, that they may be upheld upon the theory that, “ prima facie, the intentional infliction of temporal damage is a cause of action, which * * * requires a justification if the defendant is to escape.” (Aikens v. Wisconsin, 195 U. S. 194, 204; see, also, Rager v. McCloskey, 305 N. Y. 75, 80; Rochette & Parzini Corp. v. Campo, 301 N. Y. 228, 232; Advance Music Corp. v. American Tobacco Co., 296 N. Y. 79, 84; Opera on Tour v. Weber, 285 N. Y. 348, 355.)
As indicated above, Bobst alone has moved to dismiss for insufficiency (Rules Civ. Prac., rule 106, subd. 4). Inasmuch as the cause alleged against Bobst can stand only if the first cause is legally sufficient, we address ourselves to the question of whether such cause states facts sufficient to constitute a cause of action for prima facie tort.
The temporal damages of which plaintiff complains, namely (1) the loss of salary as executive director of Cancer Welfare Fund, Inc., and (2) the loss of his license to act as a private detective, are the direct result of action taken against plaintiff by public authorities. Plaintiff does not allege that the action of the public authorities has been vacated or set aside as having been unwarranted. Rather, in this action he seeks to attack the consent injunction and other official action collaterally by alleging that the issuance of the injunction was unjustified and that the cancellation of his detective’s license was without proper basis. We would violate fundamental principles were we to sanction a collateral attack upon the official acts of public authorities in a litigation to which the authorities are not parties. Until a direct attack has been successfully made and the contrary shown, we must assume that the public officials acted against plaintiff only after they had, in good faith, made independent inquiry into the charges lodged by Winchell and that their action was a proper exercise of their official powers.
*634 Although the amended complaint undertakes to assail the action of the public authorities, on this appeal plaintiff appears to recognize that the public officials must be deemed by us to have acted properly. We say this for the reason that in his brief in this court plaintiff declares that his action does not depend upon a showing that any official proceeding was erroneous or improper and that his action does not involve a collateral attack upon official action. His position is that he has a cause of action in prima facie tort against defendants upon the theory that there is no reason why the otherwise lawful act of setting official agencies in motion should be different from any other ordinarily lawful act which becomes unlawful when done solely with the malevolent purpose of harming the plaintiff. With that proposition we must disagree.
The early common law of civil wrongs paid little or no heed to a defendant’s motives. A reprehensible motive, while it might aggravate the damages, was not regarded as possessing significance unless a tort could be made out without it. As the eminent authority, Judge Cooley, stated the rule in 1879; “ Malicious motives make a bad act worse, but they cannot make that a wrong which in its own essence is lawful.” (Cooley on Torts [1st ed., 1879], p. 690.) It was not until the beginning of the eighteenth century that a malevolent motive was first held to be sufficient in and of itself to determine liability (see Prosser, Handbook of the Law of Torts [1941], § 5). The law is now settled in this State that, “ Even a lawful act done solely out of malice and illwill to injure another may be actionable.” (Al Raschid v. News Syndicate Co., 265 N. Y. 1, 4, emphasis supplied; see, also, Beardsley v. Kilmer, 236 N. Y. 80.) This is not to say that the present state of the law is that an act not otherwise tortious will, without exception, become actionable when it is done with the blameworthy purpose of injuring another and such other is in fact injured. There are situations where for one of several reasons a court is constrained to ignore the wrongful motive of the actor. For example, a court may be prompted to disregard the actor’s motive by reason of the paramount consideration of the public welfare. Accordingly, it may fairly be said that whenever the gist of an alleged cause of action (as here) is that an otherwise lawful act has become unlawful because the actor’s motives were malevolent, the court is called upon to analyze and weigh *635 the conflicting interests of the parties and of the public in order to determine which shall prevail.
In the case now before us, the two items of temporal damages— and in a prima facie tort case we do not concern ourselves with any other type of damages — are a direct result of action taken against plaintiff by public authorities. Assuming, as we must, that such action was properly taken against plaintiff, we are confronted with a situation where there was no infliction of temporal damages by defendants — a situation where the plaintiff is suffering from the consequences of some conduct inimical to the public interest committed by plaintiff himself. Are the defendants to be cast in damages for setting the official agencies in motion merely because in so doing they may have taken advantage of the opportunity to gratify a vindictive spirit? We think the answer to that question is obvious. The best interests of the public are advanced by the exposure of those guilty of offenses against the public and by the unfettered dissemination of the truth about such wrongdoers. Such a person is entitled to immunity from civil suit at the hands of the one exposed, for the truth is not to be shackled by fear of a civil action for damages. If the one who sets the agencies in motion is actuated by an evil motive he may perhaps be subject to judgment in the forum of morals but he is free from liability in a court of law. Thus, there is no merit in plaintiff’s contention that the malicious instigation of official action is no exception to the doctrine that a lawful act may become actionable when done with the intent, the effect, and the sole purpose of injuring another.
Plaintiff’s final argument is that even if there be a generally applicable ‘ ‘ insulation ’ ’ doctrine, defendants should not be absolved from liability by official action where they have themselves artfully contrived and strategically maneuvered the plaintiff into the precarious position which renders him subject to such governmental attentions. The claim, made in the brief in this court, is that defendants, actuated solely by the malevolent motive of injuring plaintiff, employed certain devices in such a way as to harass and obstruct plaintiff in his conduct of the affairs of Cancer Welfare Fund, Inc., as a result of which that organization was reduced to a financial condition in which it could not fulfill the purposes for which plaintiff had created and sought to operate it and that, therefore, defendants *636 were themselves the prime producing cause of the very conditions without which the official action would not have been taken. However sound that contention may be, as a theory, it can hardly be said that such theory is reflected in the amended complaint or that the amended complaint contains allegations of ultimate fact to support the theory. Thus, the pleading does not undertake to tell us how the defendants were the prime producing cause of the conditions leading to the cancellation of plaintiff’s pistol permit and detective’s license nor how the defendants were the prime producing cause of the conditions leading to the procurement of the consent injunction. The amended complaint contains but four allegations of the operative misconduct of the defendants which set the tone or tenor of the plaintiff’s alleged grievance: (a) instigating baseless but harassing investigations of the plaintiff and his business by law enforcement agencies which culminated in the consent injunction, (b) fomenting criminal proceedings against the plaintiff which resulted in a conviction followed by a reversal on appeal and an ultimate acquittal, (c) prevailing upon governmental departments to cancel plaintiff’s pistol permit and his private detective’s license without proper basis and (d) falsely and maliciously accusing the plaintiff of fraud, embezzlement, cheating, dishonesty, incompetency, etc. The first three allegations of wrong put in issue the validity of action taken against plaintiff by governmental authorities. As we have pointed out, we must, for the purposes of this case, assume that such actions by the officials were taken for good cause shown and, that such being so, plaintiff has no cause of action against defendants in prima facie tort regardless of defendant’s motives. The fourth allegation of wrong is suggestive of the traditional tort of slander or libel. It is deficient as stating such a cause inasmuch as the words spoken of plaintiff are not pleaded. In no event can it be fairly said that plaintiff has pleaded a cause of action in prima facie tort.
The judgment should be affirmed, with costs.
Judges Desmond, Dye, Froessel and Burke concur; Judges Fuld and Van Voorhis concur in result only.
Judgment affirmed.