APPALACHIAN POWER COMPANY, Ohio Power Company and Indiana & Michigan Electric Company, Plaintiffs,

v.

AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS, L. H. Penney, William W. Werntz and Carman G. Blough, Defendants.

United States District Court
S. D. New York.
May 20, 1959.

Simpson, Thacher & Bartlett, New York City, Whitney North Seymour, Richard M. Dicke, William J. Manning, New York City, of counsel, for plaintiffs.

Howard C. Westwood, Fontaine C. Bradley, Stanley L. Temko, Washington, D. C., and Covington & Burling, Washington, D. C., Rinaldo L. Bianchi, George C. Christie, Washington, D. C., Phil R. Stansbury, Washington, D. C., of counsel, for defendants.

LEVET, District Judge.

This is a motion for preliminary injunction to restrain the defendants from the promulgation or distribution of certain opinions recommending certain accounting practices which allegedly affect plaintiff's financial statements, unless a waiting period of 60 days elapses, and certain other prerequisites are complied with.

The above-named plaintiffs, public utility companies, engaged in the sale of power, seek a preliminary injunction to enjoin the defendant American Institute of Certified Public Accountants (hereinafter called "Institute") and the individual defendants, certain officers or Committeemen of said Institute, from adopting, issuing, promulgating, circulating, printing or in any manner publishing to the members of the defendant Institute or to any members of the accountancy profession a certain proposed letter. This letter is to the effect that the said defendant Institute or its Committee on Accounting Procedure (hereinafter called "Committee") is of the opinion or recommends that charges made to income in recognition of the deferral of income taxes should not, in accordance with generally accepted accounting principles, be credited to earned surplus or to any other account included in the stockholders' equity section of the balance sheet. The plaintiffs seek to enjoin the distribution of said letter until such time as the defendants and the Committee shall have submitted a draft thereof to certain persons; a period of not less than 60 days shall thereafter have elapsed, and the Institute's and its Committee's practices and procedures with respect to the publication of accounting research bulletins shall otherwise have been complied with.

The letter in dispute is as follows:

"American Institute of Certified Public
  Accountants
"270 Madison Avenue,
New York, 16, N. Y.
        "April 15, 1959
"To the Members of the American
  Institute of Certified Public
  Accountants

"Gentlemen:

"Question has been raised with respect to the intent of the committee on accounting procedure in using the phrase 'a deferred tax account' in Accounting Research Bulletin No. 44 (revised), *Declining-balance Depreciation,* to indicate the account to be credited for the amount of the deferred income tax (see paragraphs 4 and 5).

"The committee used the phrase in its ordinary connotation of an account to be shown in the balance sheet as a liability or a deferred credit. A provision in recognition of the deferral of income taxes, being required for the proper determination of net income, should not at the same time result in a credit to earned surplus or to any other account included in the stockholders' equity section of the balance sheet.

"Three of the twenty-one members of the committee, Messrs. Jennings, Powell and Staub, dissented to the issuance at this time of any letter interpreting Accounting Research Bulletin No. 44 (revised).

        "Committee on Accounting Procedure
        "By William W. Werntz, Chairman"

By cross-motion the defendants have moved for an order pursuant to Rule 12 (b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., dismissing the complaint on the ground that it fails to state a claim against them upon which relief can be granted. Since matters outside the pleadings have been presented to the court, and since the parties have submitted such proof, I am treating this motion as one for summary judgment as provided in Rule 56 of the Federal Rules of Civil Procedure.

The complaint herein, seeking permanent injunctive relief, was filed on April 15, 1958. This application apparently is based upon the following assertions of the plaintiffs:

(1) Plaintiffs, three operating electric utility companies, have recorded on their books of account, pursuant to certain alleged applicable requirements of state regulatory agencies, an aggregate of more than $65,000,000 in accounts designated as "Earned Surplus Restricted for Future Federal Income Taxes." In this connection plaintiffs contend that these amounts have been so accrued by them in accordance with accounting principles which heretofore have been generally accepted over a period of years by all of the well-known accounting firms experienced in utility accounting.

(2) The defendant Institute, through its Committee, from time to time publishes accounting research bulletins which are allegedly "accepted" by state and federal regulatory agencies, including the Securities and Exchange Commission, members of the accounting profession and interested members of the business community as establishing the accounting principles which must be followed by the accounting profession.

(3) Prior to the present dispute in reference to pertinent accounting procedures, it is said that the Institute had adopted procedures prerequisite to the publication of such opinions and recommendations. These procedures included, it is said, the circulation of so-called "exposure drafts of any proposed opinion" to a certain group so that the members might comment thereon, and a further procedure involving the submission of a so-called "ballot draft" to members of the Committee so that they could vote upon the proposed opinion.

(4) Plaintiffs aver that the defendants have known accounting practices of plaintiffs in reference to these matters and have had full knowledge that plain-

tiffs have accumulated more than $65,-000,000 in these accounts.

(5) It appears that in a proceeding before the Securities and Exchange Commission the Chairman of defendant's Committee and its Director of Research stated that they were about to mail under the authority of the Institute and the Committee to members of the Institute and other recipients of bulletins a letter with respect to the deferred tax account to the effect that "a provision in recognition of the deferral of income taxes, being required for the proper determination of net income, should not at the same time result in a credit to earned surplus or to any other account included in the stockholders' equity section of the balance sheet."

(6) Plaintiffs claim that the defendants in preparing and intending to publish this letter are "without legal justification," that their acts "bear no reasonable relationship to any benefits which the defendants may be seeking or to any legitimate purpose," and that the actions of the defendants in connection with the proposed distribution of the said letter and the opinion contained therein are "in wanton, reckless and wilful disregard of the said consequences of their proposed action."

(7) As a result, plaintiffs assert that substantial numbers of accountants, financial institutions, etc., will question the plaintiffs' continued inclusion of credits for deferred taxes in earned surplus and as a result plaintiffs "will be seriously interfered with in their dealings," etc. and, as stated by Donald C. Cook, a vice-president of each of the plaintiff corporations:

"  *   *   *   The removal of more than $65,000,000 from the common stock equity of the plaintiffs would, in the first instance, have the effect of limiting the short term borrowing power of plaintiffs under applicable statutes so as to decrease the amounts which plaintiffs can borrow from banks by $6,500,000.  *   *   *  " (Affidavit sworn to May 6, 1959, item 21, p. 13.)

The defendants in their opposing papers point out that:

(1) The letter, the issuance of which, without certain preliminaries, plaintiffs oppose, was adopted by the Committee in conformity with its established procedures; was specifically approved by over two-thirds of the 21 members of the Committee; that under the Committee's procedure a two-thirds vote—that is, 14 out of 21 members—is sufficient to adopt an opinion or recommendation.

(2) The opinions of the Committee have no official effect.

(3) The Committee procedures do not require the so-called "exposure" in draft form of the proposed letter, though on occasion in the past, this "exposure" procedure has been employed.

(4) a.  The Committee's position as to the accounting practice in question is followed by Arthur Andersen & Co., public accountants, who audit the accounts of one-third of the utility companies in the country;

b.  Based on a survey of the 1957 published stockholders' reports of 353 utility companies, of 226 companies reporting an accumulated credit resulting from the use of the liberalized depreciation under § 167 of the Internal Revenue Code, 26 U.S.C.A. § 167, 176 treated the credit outside the equity-capital section of the balance sheet and only 50 treated the credit as either earned surplus or restricted surplus;

c.  The Public Service Commission of the State of Indiana has ordered all companies subject to its regulations, including plaintiff Indiana & Michigan Electric Company, to cease treating the credit for deferred income taxes as a surplus account;

d.  The Federal Power Commission on May 29, 1958, issued an order to the effect that all public utility companies subject to its regulations shall not include credit for deferred income taxes in a surplus account;

e.  The Securities and Exchange Commission has promulgated a proposed policy in accord with the Committee's views.

[1] Jurisdiction herein is based upon diversity of citizenship. Hence, the law of the State of New York is applicable. The plaintiffs predicate the validity of their complaint upon the doctrine of "prima facie tort." They rely upon the New York cases of Advance Music Corporation v. American Tobacco Co., 1946, 296 N.Y. 79, 70 N.E.2d 401; Opera on Tour, Inc. v. Weber, 1941, 285 N.Y. 348, 34 N.E.2d 349, 136 A.L.R. 267; American Guild of Musical Artists v. Petrillo, 1941, 286 N.Y. 226, 36 N.E.2d 123.

Subsequently, in other decisions New York courts have discussed this doctrine of so-called "prima facie tort." Among these are Brandt v. Winchell, 1st Dept. 1954, 283 App.Div. 338, 127 N.Y.S.2d 865; Brandt v. Winchell, 1st Dept. 1955, 286 App.Div. 249, 141 N.Y.S.2d 674, affirmed 1958, 3 N.Y.2d 628, 170 N.Y. 2d 828; Ruza v. Ruza, 1st Dept.1955, 286 App.Div. 767, 146 N.Y.S.2d 808; Knapp Engraving Co., Inc. v. Keystone Photo Engraving Corp., 1st Dept. 1956, 1 A.D.2d 170, 148 N.Y.S.2d 635. See also Benton v. Kennedy-Van Saun Mfg. & Engineering Corporation, 1st Dept. 1956, A.D.2d 27, 152 N.Y.S.2d 955; Travelers Indemnity Company v. Unger, Sup., Queens Co. 1956, 4 Misc.2d 955, 158 N.Y. S.2d 892; Green v. Time, Inc., Sup., N.Y.Co.1955, 147 N.Y.S.2d 828, affirmed 1st Dept. 1955, 1 A.D.2d 665, 146 N.Y. 2d 812, affirmed 1957, 3 N.Y.2d 732, 163 N.Y.S.2d 970.

The essential elements of "prima facie tort" include the following:

(1) There must be an intent to injure plaintiff, at least to the extent of infliction of *wrongful* harm upon plaintiff without just cause or excuse. Beardsley v. Kilmer, 1923, 236 N.Y. 80, 140 N.E. 203, 27 A.L.R. 1411; Ruza v. Ruza, 1st Dept. 1955, 286 App.Div. 767, 146 N.Y.S. 2d 808; Advance Music Corporation v. American Tobacco Co., 1946, 296 N.Y. 79, 70 N.E.2d 401.

In Ruza v. Ruza, supra, Mr. Justice Breitel wrote:

"The key to the prima facie tort is the infliction of intentional harm, resulting in damage, without excuse or justification, by an act or a series of acts which would otherwise be lawful. The need for the doctrine of prima facie tort arises only because the specific acts relied upon—and which it is asserted caused the injury—are not, in the absence of the intention to harm, tortious, unlawful, and therefore, actionable. The remedy is invoked when the intention to harm, as distinguished from the intention merely to commit the act, is present, has motivated the action, and has caused the injury to plaintiff, all without excuse or justification." 286 App.Div. at page 769, 146 N.Y.S.2d at page 811.

In Knapp Engraving Co., Inc. v. Keystone Photo Engraving Corp., 1st Dept. 1956, 1 A.D.2d 170, 148 N.Y.S.2d 635, Mr. Justice Botein, now Presiding Justice of the First Department Appellate Division, wrote of prima facie tort:

"It attempts to justify the omission of these conventional tort requirements on the ground that the counterclaim should be regarded as a 'prima facie tort'. A cause of action, however, must be judged by its allegations, not its label. A prima facie tort derives from the ancient form of action on the case, covering those situations where intentional harm has been inflicted, resulting in damage, by an act or series of acts which might otherwise be lawful and which do not fall within the categories of traditional tort actions. Aikens v. State of Wisconsin, 195 U.S. 194, 25 S.Ct. 3, 49 L.Ed. 154; Opera on Tour v. Weber, 285 N.Y. 348, 34 N.E.2d 349, 136 A.L.R. 267; American Guild of Musical Artists v. Petrillo, 286 N.Y. 226, 36 N.E.2d 123; Advance Music Corp. v. American Tobacco Co., 296 N.Y. 79, 70 N.E.2d 401; Brandt v. Winchell, 283 App. Div. 338, 127 N.Y.S.2d 865, amended complaint dismissed 286 App.Div.

249, 141 N.Y.S.2d 674." 1 A.D.2d at page 172, 148 N.Y.S.2d at page 637.

(2) Justification may be viewed as a neutralizing factor that overrides the intent to injure. What constitutes justification is a policy consideration.[1] In Reinforce, Inc. v. Birney, 1954, 308 N.Y. 164, 124 N.E.2d 104, Desmond, J., wrote:

" * * * If the doers, by means not in themselves unlawful, of acts not in themselves unlawful, have any proper purpose to serve, they are not liable for the damage they cause, Peabody, Jr., & Co. v. Travelers' Ins. Co., 240 N.Y. 511, 519, 148 N.E. 661, 664, 42 A.L.R. 1090; Al Raschid v. News Syndicate Co., 265 N.Y. 1, 191 N.E. 713. * * * " 308 N.Y. at page 169, 124 N.E.2d at page 106.

In Beardsley v. Kilmer, 1923, 236 N.Y. 80, 140 N.E. 203, 27 A.L.R. 1411, the concept of justification was expressed as follows:

" * * * The question how far one individual shall be restrained from doing acts which are inherently proper out of respect for the rights of others is bound to be a delicate one. The proposition that a man may not dig a well upon his own land or enter upon a lawful business is one to be advanced with considerable caution, and the cases seem firmly to establish the rule that if he digs a well because he really wants the water or starts the business for personal advantage or gain his neighbor is without remedy however much he suffers, and even though the act may also have been tinged with animosity and malice." 236 N.Y. at pages 89–90, 140 N.E. at page 205.

In Brandt v. Winchell, 1958, 3 N.Y.2d 628, 170 N.Y.S.2d 828, Chief Judge Conway stated:

" * * * The law is now settled in this State that, 'Even a lawful act done solely out of malice and ill-will to injure another *may* be actionable.' Al Raschid v. News Syndicate Co., 265 N.Y. 1, 4, 191 N.E. 713, 714, emphasis supplied; see, also, Beardsley v. Kilmer, 236 N.Y. 80, 140 N.E. 203, 27 A.L.R. 1411. This is not to say that the present state of the law is that an act not otherwise tortious will, without exception, become actionable when it is done with the blameworthy purpose of injuring another and such other is in fact injured. There are situations where for one of several reasons a court is constrained to ignore the wrongful motive of the actor. For example, a court may be prompted to disregard the actor's motive by reason of the paramount consideration of the public welfare. Accordingly, it may fairly be said that whenever the gist of an alleged cause of action (as here) is that an otherwise lawful act has become unlawful because the actor's motives were malevolent, the court is called upon to analyze and weigh the conflicting interests of the parties and of the public in order to determine which shall prevail." 3 N.Y.2d at pages 634–635, 170 N.Y.S. 2d at page 833.

(3) Damages, which must be specially pleaded. Rager v. McCloskey, 1953, 305 N.Y. 75, 111 N.E.2d 214; Brandt v. Winchell, 1st Dept. 1955, 286 App.Div. 249, 141 N.Y.S.2d 674, affirmed 1958, 3 N.Y.2d 628, 170 N.Y.S.2d 828; Faulk v. Aware, Inc., Sup., N.Y.Co.1956, 3 Misc. 2d 833, 839, 155 N.Y.S.2d 726, affirmed without opinion 1st Dept. 1957, 3 A.D.2d 703, 160 N.Y.S.2d 621.

In Brandt v. Winchell, supra, the Appellate Division, 1st Department, in a per curiam opinion stated:

" * * * The amended complaint proceeds solely on the theory of prima facie tort. As we previously noted, damage is an essential element in a cause of action for prima

---

1. Recent Developments in the New York Law of Prima Facie Tort, 32 St. John's Law Review, 282, 288.

facie tort and must be pleaded specially, for it consists of injury due to loss in plaintiff's occupation or business. See 283 App.Div. [338], at page 342, 127 N.Y.S.2d at page 867." 286 App.Div. at page 250, 141 N.Y.S.2d at page 675.

Although "the most conspicuous use of the prima facie tort doctrine has been to create new causes of action where the plaintiff's claim does not fall within a traditional tort category," [2] as Mr. Justice Breitel said in Ruza v. Ruza, 1st Dept. 1955, 286 App.Div. 767, 146 N.Y.S.2d 808: "A bad complaint is not made good by the blanket assertion that it relies on the doctrine of 'prima facie tort.' " 286 App.Div. at page 769, 146 N.Y.S.2d at page 810.

■ Plaintiffs, although not members of the Institute, seek to force it to follow certain prerequisites to publication of opinions of the Institute's Committee. Plaintiffs, having adhered to certain accounting procedures for several years, have recorded in "restricted earned surplus accounts" some $65,000,000, representing credits for payment of federal income taxes which may have to be paid in the future. Now, urge the plaintiffs, the Institute's Committee's opinion will or may be accepted by the Securities and Exchange Commission in rulings on financial statements.

The facts in the case of Advance Music Corporation v. American Tobacco Co., 1946, 296 N.Y. 79, 70 N.E.2d 401, are basically different from those in the present case:

(1) There, the defendant misrepresented the nature of the survey of the popularity of the songs presented based on sales—a fact not an opinion.

(2) The defendant's acts and representations definitely and directly affected plaintiff's sales. A business interference resulted.

(3) Damages naturally flowing from the acts and misrepresentations of the defendant and causally affecting the sales of the plaintiff were set forth.

(4) No justification for the defendant's acts appeared.

Here, the communications which defendants intend to promulgate do not mention plaintiffs. The plaintiffs, like other business enterprises which may be affected, may, if they so elect, appear before the appropriate governmental body to sustain their own contentions. There is no misrepresentation, no fraud. The acts of the defendants can hardly be termed wanton. The purposes of the defendant Institute are adequate justification, if justification, indeed, be required, to permit the proposed communications. There is no adequate proof (even if the plaintiffs had any right to insist on the Committee procedures they mention) that the Institute's rules have been or are about to be violated. In fact, the contrary appears.

There is no allegation that the method of accounting proposed by defendants is inherently false or fraudulent. On the contrary, it is supported by respectable authority. Neither is there any allegation of special damages, except in the most general and speculative terms.

This action is not to prevent interference with plaintiffs' contracts, their sales or their property. It seeks to delay the distribution of an adverse opinion relative to accounting procedures. True, it may ultimately affect plaintiffs' application for credit. However, such a result is collateral, not direct, an effect which incidentally flows from a justifiable act. The plaintiffs may have grievances, but they relate to the distribution of honest opinions, not facts. No threat of intentional, unjustifiable harm to plaintiffs' business rights or property exists.

This court has been unable to find any precedent under the doctrine of prima facie tort or otherwise for a preliminary or final injunction forbidding a group from publishing and distributing opinions under circumstances equivalent or even similar to these.

2. The Prima Facie Tort Doctrine, 52 Columbia Law Review 503, 512.

Accordingly, the application for preliminary injunction must be denied and the complaint dismissed and summary judgment granted.

Settle order on notice.