TRB Acquisitions LLC v Yedid (2023 NY Slip Op 01654)

TRB Acquisitions LLC v Yedid

2023 NY Slip Op 01654

Decided on March 28, 2023

Appellate Division, First Department

RODRIGUEZ, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: March 28, 2023
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Dianne T. Renwick
Troy K. Webber Peter H. Moulton Lizbeth González Julio Rodriguez III

Index No. 651160/21 Appeal No. 17130 Case No. 2022-01011 

[*1]TRB Acquisitions LLC, et al, Plaintiffs-Appellants,
v
Jack Yedid, Defendant-Respondent.

Plaintiff appeals from the order of the Supreme Court, New York County (Jennifer G. Schecter, J.), entered September 20, 2021, which granted defendant's motion to dismiss the complaint.

Stroock & Stroock & Lavan LLP, New York (Burton N. Lipshie and James L. Bernard of counsel), for appellants.
Oved & Oved LLP, New York (James Reilly and Christopher Rados of counsel), for respondent.

RODRIGUEZ, J. 

The main issue presented on this appeal is whether plaintiffs' complaint alleges conduct upon which invocation of the absolute litigation privilege would constitute abuse of the privilege such that its protections should not apply or be withdrawn.
Examination of the applicable law, particularly with respect to plaintiffs' proposed exception to the privilege, demonstrates that the course of conduct alleged implicates a limited exception analogous to that applied in Posner v Lewis (18 NY3d 566 [2012]) to another absolute privilege. Accordingly, where a party engages in an extortion attempt by threatening to provide false testimony in a separate action if their demands are not accepted, and, following rejection, affirmatively reaches out to the extortion target's adversaries in the separate litigation, indeed offering to provide false testimony in that action, the absolute litigation privilege will not bar the action.
Complaint and Proceedings in Supreme Court
Plaintiffs' Complaint
This action arises from a dispute among the Yedid family and certain controlled entities. In particular, the complaint alleges that defendant Jack Yedid (defendant) engaged in an extortion attempt in connection with litigation in Oregon federal court brought by Reebok (the Reebok litigation) against plaintiffs TRB Acquisitions LLC (TRB) and E.D.Y. Equities LLC (EDY).
TRB, a New York company that acquires and licenses trademarks for activewear and athleisure products, was formed and managed by nonparty Eli Yedid, who also owns plaintiff EDY. Defendant, Eli's brother, was an original member and co-owner of TRB. At the time TRB was formed, Eli and defendant each owned a 17% membership interest. The confidentiality provisions plaintiffs rely on to assert their sole cause of action for breach of contract were contained in an agreement which provided for EDY's buyout of defendant's interest in TRB (the TRB Agreement).
The complaint alleges that, in 2015, nonparty Reebok commenced the Reebok litigation alleging trademark infringement and unfair competition against TRB and another Yedid-owned company, Cutie Pie Baby (CPB). Reebok alleged that TRB's "RBX" trademarks and logo, which CPB licensed, infringed on trademarks Reebok owned; CPB and TRB's main defense was laches.
The TRB Agreement, entered into in 2016, contained confidentiality and nondisparagement provisions concerning TRB's operations, which specifically included information regarding the Reebok litigation.
In 2019, defendant commenced an arbitration against Eli and their father concerning management of CPB, including defendant's removal from his position as a director and officer of CPB. During the arbitration, defendant and his attorneys threatened Eli and his attorneys that if Eli did not "pay up" in the arbitration, defendant would provide information to Reebok that would hurt TRB in the Reebok litigation. Revealing that information would hurt Eli and EDY as owners of TRB.
When Eli refused to comply, defendant [*2]and his attorneys allegedly caused anonymous phone calls to be made to Reebok's counsel stating that defendant possessed information that TRB "intended to copy Reebok from the get-go." Defendant's attorneys also notified Reebok's counsel that defendant would comply with a subpoena issued to him. Reebok listed defendant as a witness before trial and detailed defendant's expected testimony, including allegedly false testimony that TRB intended to create a "knockoff" brand infringing on Reebok's marks. The description of expected testimony also made clear that defendant had breached the TRB Agreement by disclosing information concerning TRB's operations and information concerning the Reebok litigation. Although he was in New York, defendant accepted a subpoena to appear at trial before the District Court of Oregon. Defendant's actions allegedly led TRB to settle the Reebok litigation on terms that, but for defendant's conduct, were unnecessarily unfavorable to TRB.
As noted, plaintiffs allege that defendant threatened to provide false testimony in connection with his extortion attempt. The complaint alleges, inter alia, that "the portions of [defendant]'s anticipated testimony regarding TRB's and Eli Yedid's alleged 'bad faith intent' to create a 'knockoff' Reebok brand were false," and that defendant "knew that his threatened testimony for Reebok, although false, would compromise TRB's defenses in the Reebok litigation."
Motion to Dismiss and Supreme Court's Decision on Appeal
Defendant moved to dismiss plaintiffs' complaint pursuant to CPLR 3211(a)(7) for failure to state a claim, arguing principally that the action was barred by the absolute litigation privilege. Defendant argued that, accepting the complaint's allegations as true, the confidential information was given to Reebok's counsel in connection with, and was pertinent to, the Reebok litigation.
In opposition, plaintiffs argued that the privilege did not apply, analogizing defendant's alleged extortion to an abuse of the legal process for an improper purpose, and asserting that use of the privilege in view of such allegations constituted abuse. Plaintiffs contended that their claim was therefore actionable.
Supreme Court granted defendant's motion, dismissing the complaint with prejudice. Supreme Court held that because plaintiffs allege that defendant breached the TRB Agreement by providing confidential and disparaging information to Reebok that was pertinent to the Reebok litigation, any such statements were covered by the litigation privilege, effectively barring the breach of contract claim. The court noted that the privilege covers any information that is pertinent to the underlying litigation, regardless of a defendant's intent, and provides immunity to, among other things, claims of breach of a nondisparagement agreement.
Relevant Applicable Law
Litigation Privilege in General
"[I]t is well-settled that statements made in the course of litigation are entitled to absolute privilege[*3]" (Front, Inc. v Khalil, 24 NY3d 713, 718 [2015]). Such immunity was recognized by the Court of Appeals in Youmans v Smith (153 NY 214 [1897]) as follows:
"'A counsel, or party conducting judicial proceedings, is privileged in respect to words or writings used in the course of such proceedings reflecting injuriously upon others, when such words and writings are material and pertinent to the questions involved; . . . within such limit, the protection is complete, irrespective of the motive with which they are used; but such privilege does not extend to matter, having no materiality or pertinency to such questions.'" (153 NYat 219, quoting Marsh v Ellsworth, 50 NY 309, 311-312 [1872]). 

Later, in Park Knoll Assoc. v Schmidt (59 NY2d 205 [1983]), the Court of Appeals further described the privilege and its rationale as applied to specific actors in judicial proceedings, including witnesses:
"In judicial proceedings the protected participants include the Judge, the jurors, the attorneys, the parties and the witnesses. They are granted this protection for the benefit of the public, to promote the administration of justice, and only incidentally for the protection of the participants. Thus, . . . a witness is immune from suit for defamatory remarks pertinent to a judicial proceeding, but not for those made before the proceeding commences. The immunity does not attach solely because the speaker is a Judge, attorney, party or a witness, but because the statements are, in the words of Lord Mansfield, 'spoken in office.'" (59 NY2d at 209-210 [internal citations omitted], quoting R. v Skinner, Lofft, p 55, quoted in Andrews v Gardiner, 224 NY 440, 446 [1918]). "The public interest requires that such statements be absolutely privileged so that those discharging a public function may speak freely in doing so, insulated from harassment and fear of financial hazard" (Park Knoll at 209). Since the privilege is absolute, "it confers immunity from liability regardless of motive" (id.). The privilege "embraces anything that may possibly be pertinent or which has enough appearance of connection with the case" (Pomerance v McTiernan, 51 AD3d 526, 528 [1st Dept 2008] [internal quotation marks omitted]).
This Court "has recognized, however, that the privilege is capable of abuse" (Flomenhaft v Finkelstein, 127 AD3d 634, 638 [1st Dept 2015]), and "if the privilege is abused, protection is withdrawn" (Youmans, 153 NYat 220). For example, the privilege "will not be conferred where the underlying lawsuit was a sham action brought solely to defame the defendant" (Flomenhaft, 127 AD3d at 638).
In a separate line of cases examining claims founded upon perjury, this Court has recognized a further exception "where the testimony is part of a larger scheme to defraud" (Martinson v Blau, 292 AD2d 234, 235 [1st Dept 2002], citing Newin Corp. v Hartford Acc. & Indem. Co., 37 NY2d 211, 217 [1975] [discussing the "ancient rule that the courts of this State will not entertain civil [*4]actions . . . arising from alleged subornation of perjury in a prior civil proceeding," and noting the exception "where the perjury is merely a means to the accomplishment of a larger fraudulent scheme"]; see also New York City Tr. Auth. v Morris J. Eisen, P.C., 276 AD2d 78, 87-88 [1st Dept 2000], abrogated on other grounds Melcher v Greenberg Traurig, LLP, 23 NY3d 10 [2014]).[FN1] The test in such instances is whether "[t]he acts of the defendants upon the [prior proceeding] are but a part of an entire transaction" (Burbrooke Mfg. Co., Inc. v St. George Textile Corp., 283 App Div 640, 641 [1st Dept 1954], quoting Verplanck v Van Buren, 76 NY 247, 261 [1879]; see Newin Corp., 37 NY2d at 217-218).
Analogous Privilege and Extortion Exception
A separate absolute privilege recognized by the Court of Appeals is that for reports to public authorities, as described in Brandt v Winchell (3 NY2d 628 [1958]). The Brandt decision was recounted in the later case, Posner v Lewis (18 NY3d 566 [2012]), as follows:
"In Brandt, the plaintiff brought a prima facie tort claim against columnist Walter Winchell and philanthropist Elmer Bobst for maliciously provoking an official investigation against a cancer fund organized by plaintiff in order to stifle competition with defendants' cancer research fund. Following an investigation by the Attorney General, plaintiff agreed to dissolve the fund and refrain from any future solicitation of charitable contributions. We affirmed the dismissal of the complaint, applying a balancing test for claims alleging that a lawful act (the making of a complaint) became unlawful as a result of the complaining party's malicious motives—we 'analyze[d] and weigh[ed] the conflicting interests of the parties and of the public in order to determine which shall prevail' (3 NY2d at 634-635).
"We concluded in Brandt that defendants' lawful act of initiating charges related to plaintiff's mishandling of the charitable fund did not become actionable because it was motivated by personal malevolence, reasoning that '[t]he best interests of the public are advanced by the exposure of those guilty of offenses against the public and by the unfettered dissemination of the truth about such wrongdoers' (id. at 635). Under these circumstances, the Brandt defendants were 'entitled to immunity from civil suit at the hands of the one exposed, for the truth is not to be shackled by fear of a civil action for damages' (id.)." (Posner, 18 NY3dat 570-571). As noted, the privilege recognized in Brandt is, like the litigation privilege, "absolute" (id. at 571; see generally Park Knoll, 59 NY2d at 208-209 [comparing absolute and qualified privileges]).
In Posner, the Court of Appeals examined whether the privilege covered similar reports to public authorities but where such reports were made subsequent to a rebuffed blackmail threat (18 NY3dat 568-569).[FN2] Plaintiff Posner, an untenured teacher, alleged that the defendants, his former in-laws, threatened to disclose [*5]to school officials that the plaintiff had engaged in improper conduct (having an affair with a parent of a child in his class) so that the plaintiff would not get tenure; the defendants allegedly acted in retaliation for the plaintiff's refusal to relinquish his parental rights to his daughter (id. at 571). When Posner refused to accede to his in-laws' demands, they made good on their threats by sending a letter to the State Department of Education accusing Posner of the affair and demanding disciplinary action (id. at 569, 571).
The Court of Appeals held, "[i]n light of the intimidation and threatening conduct allegedly directed at Posner, . . . the absolute privilege articulated in Brandt should not be extended to protect the course of conduct alleged" (id. at 571). "[I]n fact, the dispositive allegation that place[d]" Posner "outside of the realm of Brandt and the other cases . . . is an affirmative act—defendants' conduct in attempting to blackmail Posner" (id. at 572). The Court of Appeals thus held that the defendants' motion to dismiss was properly denied since defendants' conduct should not be afforded the privilege's protection (id.).
Discussion
In the present appeal, plaintiffs do not dispute that the allegedly false information defendant provided to plaintiffs' adversaries in the Reebok litigation was pertinent to those proceedings. Rather, plaintiffs argue that Supreme Court committed error in dismissing their complaint because defendant's assertion of the litigation privilege constitutes abuse of the privilege, and the privilege's protection should therefore be withdrawn.
In their briefs, plaintiffs refer to the sham-litigation exception in framing their argument in support of recognition of a further exception to the privilege, in this instance for well-pleaded allegations of extortion. Specifically, plaintiffs argue that where defendant affirmatively acts to carry out a threat made in connection with a rebuffed extortion threat, claims based on that course of conduct should be permitted, notwithstanding that the threat concerned testimony or intended testimony in a judicial proceeding.
In response, defendant's essential contention is that, as a result of the absolute privilege, all pertinent statements made by anyone in the context of an ongoing litigation, including from nonparty or potential witnesses, cannot give rise to any civil claims. Defendant further argues that plaintiffs' proposed exception is unsupported by relevant authority and would, moreover, improvidently weaken the privilege to the detriment of candor and the function of truth-finding in judicial proceedings.
Plaintiffs' position, that an exception to the absolute litigation privilege may be recognized on the authority and general rationale of Posner, is persuasive, with one caveat. As noted, plaintiffs here allege that defendant, following a rebuffed extortion threat, affirmatively reached out to plaintiffs' litigation adversary and indicated a willingness [*6]to provide false testimony. These allegations offer a distinction from those in Posner, however, as there was no apparent dispute that the reports to public authorities in Posner were truthful (see Posner, 18 NY3d at 568-569). Accordingly, the narrow exception recognized to decide the present appeal only concerns extortion based on threats of false testimony.
As observed by the Court of Appeals in Park Knoll, "[b]ecause the perceived social benefit in encouraging free speech or the discharge of governmental responsibility sometimes outweighs the individual's underlying right[s] . . . , the individual's right[s] may have to yield to a privilege granted the speaker barring recovery of damages for the . . . statements" (59 NY2d at 208). Although the preceding quotation concerns the classification of privileges as either absolute or qualified, considerations of a privilege's purpose are inherently relevant to examinations of whether the privilege has been abused (see e.g. Halperin v Salvan, 117 AD2d 544, 548 [1st Dept 1986]).
Inasmuch as plaintiffs' complaint does not allege that defendant's attempted extortion was based on threats to testify truthfully, the parties' briefs understandably do not thoroughly examine the relative benefits and detriments of an exception for extortion threats to provide truthful testimony in litigation.[FN3] Consequently, because plaintiffs' complaint only alleges threats to commit perjury—and considering (1) the risk, however small, of increasing the potential for "harassment and fear of financial hazard" for "those discharging a public function" (Park Knoll at 209) and (2) the litigation privilege's purpose to, among other things, "promote the administration of justice" (id.)—general principles of judicial restraint instruct that only a narrow exception be recognized here (see e.g. Nussenzweig v diCorcia, 38 AD3d 339, 340 [1st Dept 2007], affd 9 NY3d 184 [2007]).[FN4]
Under the circumstances, defendant's invocation of the absolute privilege for statements made in and pertinent to a judicial proceeding to immunize the conduct alleged constitutes abuse of the privilege. Defendant's arguments to the contrary are unavailing insofar as they would convert the privilege, under the right conditions, into an extortionist's shield.
Accordingly, defendant's alleged conduct—an extortion attempt by threatening to provide false testimony in a separate action if his demand in the arbitration were not accepted and, following rejection, affirmatively reaching out to plaintiffs' adversaries in the separate Reebok litigation, indeed offering to provide false testimony in that action—is a course of conduct for which the protection afforded by an absolute privilege is appropriately withdrawn (see Posner, 18 NY3d at 571-572 ["in fact, the dispositive allegation . . . is an affirmative act"]; see also Halperin v Salvan, 117 AD2d 544 at 548). Plaintiffs' claim for breach of a confidentiality and nondisparagement agreement was thus improperly dismissed[*7], and Supreme Court's decision should be reversed and the complaint reinstated.
Considering the above, plaintiffs' request, made for the first time on appeal, for this Court to identify a cause of action for prima facie tort in their complaint and permit amendment to add the claim upon remand, is rejected at this juncture. Plaintiffs may of course seek amendment of the complaint upon motion in Supreme Court (see CPLR 3025 [b] ["A party may amend his or her pleading . . . at any time by leave of court"]).
Accordingly, the order of the Supreme Court, New York County (Jennifer G. Schecter, J.), entered September 20, 2021, which granted defendant's motion to dismiss the complaint, should be reversed, on the law, without costs, the motion denied, and the complaint reinstated.
Order, Supreme Court, New York County (Jennifer G. Schecter, J.), entered September 20, 2021, reversed, on the law, without costs, the motion denied, and the complaint reinstated.
Opinion by Rodriguez, J. All concur.
Renwick, J.P., Webber, Moulton, González, Rodriguez, JJ.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: March 28, 2023

Footnotes

Footnote 1: As indicated, the case law concerning the litigation privilege appears to present two lines of cases examining related issues. One set of cases, starting with Youmans (153 NY 214), analyzes whether statements or materials, in "a proceeding before a court," are "'pertinent to the questions involved'" (Front, Inc., 24 NY3d at 717, quoting Youmans, 153 NY at 219) and thus whether the absolute litigation privilege obtains, most often in relation to defamation claims (see e.g. Front, Inc., 24 NY3d 713[defamation claims]; Park Knoll Assoc., 59 NY2d 205 [defamation claims]; Martirano v Frost, 25 NY2d 505 [1969] [defamation claims]; Arts4All, Ltd. v Hancock, 5 AD3d 106 [1st Dept 2004] [defamation and contract claims]). The second category, beginning with Verplanck v Van Buren (76 NY 247 [1879]), examines whether actions are barred by the rule against civil claims for perjury (see e.g. Newin Corp., 37 NY2d at 217; New York City Tr. Auth. v Morris J. Eisen, P.C., 276 AD2d 78; Burbrooke Mfg. Co., Inc. v St. George Textile Corp., 283 App Div 640 [1st Dept 1954]). The lines of cases, although separate, fundamentally relate to the same issue—whether a collateral action may be elementally based on statements or materials pertinent to prior litigation (seeAnnotation, Actionability of Conspiracy to Give or to Procure False Testimony or Other Evidence, 31 ALR3d 1423, § 2[a]). Ultimately, although the perjury case law may appropriately be considered a subset of the broader set of precedents regarding the litigation privilege (see Park Knoll, 59 NY2d at 209-210 [describing general contours of the privilege]), it remains that there appears to be no acknowledgement or exploration of the interplay between these rules.

Footnote 2: "Blackmail has frequently been construed by the courts as synonymous with extortion" (Guenther v Ridgway Co., 170 App Div 725, 727 [1st Dept 1915]), and any differences are immaterial here. 

Footnote 3: Additionally, although there can be little doubt that executive and administrative public authorities (to which the defendants' reports were directed in Posner) have a substantial interest in receiving honest and accurate testimony and evidence, case law suggests that courts have a comparatively, if minimally, greater interest in this regard (compare e.g. Park Knoll, 59 NY2d at 210, with Seltzer v Fields, 20 AD2d 60, 61-62 [1st Dept 1963], affd 14 NY2d 624 [1964]).
Footnote 4: As observed above (at n 1), notwithstanding the apparently siloed lines of cases, it appears that the precedents examining the bar against actions upon perjury are analytically within the broader absolute litigation privilege. Plaintiffs' allegations here appear to be plausibly covered by the perjury cases' attendant (and existing) exception for "a larger scheme to defraud" (Martinson, 292 AD2d at 235; see Burbrooke, 283 App Div at 641 [test is whether "[t]he acts of the defendants upon the [prior proceeding] are but a part of an entire transaction"]). However, given the present holding based on the applicability of Posner's exception to a comparable absolute privilege, the nature of the connection between the lines of cases identified may await further development.