DAVID R. BERSANI et al., Appellants, *v.* GENERAL ACCIDENT FIRE & LIFE ASSURANCE CORPORATION, LTD., Respondent.

Fourth Department, April 11, 1974.

*Schaus & Schaus* (*Robert Schaus* of counsel), for appellant.

*Hodgson, Russ, Andrews, Woods & Goodyear* (*Hugh McM. Russ, Jr.,* of counsel), for respondent.

SIMONS, J. This is an appeal from a judgment of Supreme Court which dismissed plaintiffs' complaint in an action to recover on a fire insurance policy issued by the defendant. The defendant pleaded as an affirmative defense that the policy was void because the agents of the contracting parties agreed orally before issuance of the policy that no claim would be made under it.

In 1963 August Bersani and August Galasso began to acquire property in Niagara Falls near a tourist attraction known as the Aquarium. Eventually they intended to demolish the buildings and redevelop the property. As part of the assemblage, they purchased 582 Third Street, a lot on which were located a two and a-half story two-family house and another building used as a garage and apartment. The purchase price was $23,000 and included the assumption of an outstanding mortgage in excess of $8,000 held by Niagara County Savings Bank. The sale was negotiated and the property managed by their attorney. The deed conveying the subject property was dated June 14, 1966 but the purchasers permitted the sellers to remain in the premises until the fall of 1966. When the tenants vacated the building, the existing fire insurance was canceled. Mr. Bersani's attorney attempted to get the policy reinstated through the Stevens-Van DeBogart Agency and when that could not be done because the premises were vacant, he requested that Mr. Stevens place the coverage in another company. A new policy, effective November 25, 1966, was written by respondent through its agent Stevens and the premium was paid. Originally it listed only the savings bank as mortgagee. On December 6, 1966 an indorsement was issued listing the Manufacturers and Traders Trust Company as second mortgagee. The trust company had taken a mortgage on the entire assemblage as collateral security for additional loans to the owners.

Subsequently, in December of 1966 August Bersani's interest in the property, along with his interest in several other parcels of realty in the assemblage, was transferred to his two sons David and Rudolph Bersani. An indorsement of the insurance

policy was issued January 18, 1967 listing the new owners of 582 Third Street as David and Rudolph Bersani and August Galasso, the appellants in this action. On October 15, 1967 the building was gutted by fire and rendered a total loss. Appellants seek to recover $6,000, the full amount of the policy. August Bersani died after the fire but before the trial.

Respondent asserts that the policy was void, that its agent Stevens and appellants' agent McDonald, negotiated the purchase of the policy subject to an oral agreement that no claim would be made in the case of loss and with the understanding that the purpose of the policy was to induce the mortgagees to loan on the security of the property. Both agents concede as much. There is no evidence that the appellants participated in making the oral agreement not to press any claim or that they knew of it.

Respondent contends that under the rule in *Grierson* v. *Mason* (60 N. Y. 394) parol evidence of this oral agreement was admissible to show that an insurance contract was not intended by the parties and never became effective. The trial court agreed and dismissed the complaint. We have no quarrel with the general rule stated in that case, but we fail to see how strangers to an agreement whose interest has been acknowledged by indorsement of a paid-up insurance policy may be bound by an oral contract contrived between the agent of the insurer and that of the former owner made for purposes of misleading mortgagees or how a judgment of the court may be used to give effect to such a plan. Even assuming that the conduct of the insured's agent was imputed to him, there is nothing in the record to charge that knowledge or participation to his sons who subsequently acquired the property. An insurer may not treat a policy as valid for the purpose of earning and collecting premiums and later treat it as void from its inception for purposes of defense in an action to recover a loss. The insurer wrote the policy, accepted the premium, allowed the policy to be used to induce action by third parties, and consented by written indorsement to transfer of the coverage to appellants. Now that the reciprocal performance promised by the insurer is demanded, it has denied liability.

New York has regulated the sale of insurance by statute for the protection of the policyholder and the public (*Matter of Massachusetts Mut. Life Ins. Co.* v. *Thacher*, 15 A D 2d 242, 247, affd. 11 N Y 2d 923). The standard fire insurance policy is set forth in section 168 of the Insurance Law, and no policy or contract of fire insurance may "be made, issued or delivered by

an insurer'' or his agent unless it conforms with the statute (*ibid.* subd. 2).

A contract of insurance which violates the Insurance Law is contrary to public policy and cannot be enforced (*Employers' Liab. Assur. Corp.* v. *Hayes Constr. Co.*, 243 N. Y. 261; *Peabody, Jr. & Co.* v. *Travelers Ins. Co.*, 240 N. Y. 511). If any of the policy terms violate the provisions of the Insurance Law, the contract is valid and binding on the insurer and enforceable as if its terms complied with the statute (Insurance Law, § 143; *Posner* v. *United States Fid. & Guar. Co.*, 33 Misc 2d 653, affd. *sub nom. Posner* v. *New York Mut. Underwriters*, 16 A D 2d 1013). Similarly, a collateral oral contract not to enforce an executed fire insurance policy is contrary to public policy and may not be given effect by the courts. As the respondent's agent testified, any attempt to incorporate this oral agreement not to claim a loss into the insurance policy would have been unenforceable and illegal (*Bakker* v. *Aetna Life Ins. Co.*, 264 N. Y. 150; *Travelers Ins. Co.* v. *Russo*, 155 Misc. 589). Now we are asked by respondent to permit the insurer to do by indirection (limit the effect of a fire insurance policy complete on its face) that which is prohibited by statute. We should not. The policy permitted a misrepresentation of the facts to the mortgagees and violated the express language of section 168 of the Insurance Law.

The respondent executed a sham insurance policy and placed it in commerce with the intention of misleading others unaware that the parties had agreed not to enforce it. Because of the collateral agreement, the mortgagees were exposed to uncertainty and possible litigation to establish the validity of their claims. Others relying upon an apparently legitimate contract of indemnity on the property, might be misled similarly. The agreement attempted to interfere with the rights of third parties and to prevent the contracting parties from performing their obligations. The document was '' made, issued, and delivered '' by the insurer, but because of the collateral agreement, it did not conform to the requirements of the Insurance Law.

Respondent suggests that the mortgagees' legal positions were assured under decisional law (*Syracuse Sav. Bank* v. *Yorkshire Ins. Co.*, 301 N. Y. 403; *Savarese* v. *Ohio Farmers Ins. Co.*, 260 N. Y. 45). Presumably, it means that the policy did take effect for some purposes. In other words, if the appellants refused or were unable to pay the mortgage debt from their own funds, then the insurer would pay up to the face amount of the policy to the mortgagees. Not only is this contention beside the point,

it is inconsistent with respondents' basic position that the policy never became effective.

The general rule is that while courts do not aid either party to an illegal contract, an insurance company may not escape liability by its failure to obey the law (*Posner* v. *United States Fid. & Guar. Co.*, 33 Misc 2d 653, 655, affd. 16 A D 2d 1013, *supra*). Our decision does not enforce an illegal contract, it permits recovery on a valid insurance policy. When the courts permit a defense, it is not as protection to a defendant, but disability to the plaintiff (*Bay Parkway Nat. Bank* v. *Shalom*, 270 N. Y. 172, 176). By refusing to accept this respondent's affirmative defense based upon an illegal collateral agreement, the parties are left where we find them and the insurance contract is enforced. The oral contract was a device which permitted a misrepresentation of the facts to the detriment of parties having a legitimate interest in the truth and accuracy of the insurance policy. It should not be permitted (cf. *Mount Vernon Trust Co.* v. *Bergoff*, 272 N. Y. 192). The respondent having issued the policy, accepted the premium and ratified the changed indorsement, it is the party best able to absorb the loss and prevent the recurrence of such practices.

The proof established damages in excess of the policy coverage. The judgment should be reversed and judgment rendered in favor of appellants in the amount of $6,000 with interest.

WITMER, J. P., CARDAMONE, GOLDMAN and DEL VECCHIO, JJ., concur.

Judgment unanimously reversed on the law and facts, with costs, and judgment entered in favor of plaintiffs in accordance with opinion by SIMONS, J.