[28 NE3d 15, 4 NYS3d 581]

FRONT, INC., Plaintiff, v PHILIP KHALIL et al., Defendants.

PHILIP KHALIL, Third-Party Plaintiff-Appellant, v JEFFREY A. KIMMEL et al., Third-Party Defendants-Respondents.

Argued January 14, 2015; decided February 24, 2015

## POINTS OF COUNSEL

*The Marantz Law Firm*, Rye (*Neil G. Marantz* of counsel), for third-party plaintiff-appellant. I. The First Department, without explanation, has erroneously departed from settled law. (*Block v First Blood Assoc.*, 691 F Supp 685; *Reeves v American Broadcasting Cos., Inc.*, 580 F Supp 84, 719 F2d 602; *Park Knoll Assoc. v Schmidt*, 59 NY2d 205; *Kenny v Cleary*, 47 AD2d 531; *Uni-Service Risk Mgt. v New York State Assn. of School Bus. Officials*, 62 AD2d 1093; *Andrews v Gardiner*, 224 NY 440; *Rosen v Brandes*, 105 Misc 2d 506; *Sexter & Warmflash, P.C. v Margrabe*, 38 AD3d 163; *Vodopia v Ziff-Davis Publ. Co.*, 243 AD2d 368.) II. There is no rationale—and none articulated by the First Department—for departing from settled law and disregarding this Court's expressed reluctance to expand application of the absolute privilege doctrine. (*Toker v Pollak*, 44 NY2d 211; *Park Knoll Assoc. v Schmidt*, 59 NY2d 205; *Stukuls v State of New York*, 42 NY2d 272; *Garson v Hendlin*, 141 AD2d 55; *Gold v Intersoft Corp.*, 128 Misc 2d 198; *Kenny v Cleary*, 47 AD2d 531; *Uni-Service Risk Mgt. v New York State Assn. of School Bus. Officials*, 62 AD2d 1093.) III. The perils of the appellate order's disregard of long-established policy and equitable

safeguards are underscored by the facts at bar. (*Lacher v Engel*, 33 AD3d 10; *Youmans v Smith*, 153 NY 214; *Martirano v Frost*, 25 NY2d 505; *Simon v Stim*, 11 Misc 2d 653; *Andrews v Gardiner*, 224 NY 440; *Park Knoll Assoc. v Schmidt*, 59 NY2d 205; *Mintz & Gold LLP v Zimmerman*, 17 Misc 3d 972, 56 AD3d 358; *The Savage Is Loose Co. v United Artists Theatre Circuit, Inc.*, 413 F Supp 555; *Sexter & Warmflash, P.C. v Margrabe*, 38 AD3d 163; *Rinaldi v Viking Penguin*, 52 NY2d 422.)

*Traub Lieberman Straus & Shrewsberry LLP*, Hawthorne (*Lisa L. Shrewsberry* of counsel), for third-party defendants-respondents. I. Third-party plaintiff failed to state a claim for defamation. (*Park Knoll Assoc. v Schmidt*, 59 NY2d 205; *Lacher v Engel*, 33 AD3d 10; *Sexter & Warmflash, P.C. v Margrabe*, 38 AD3d 163; *Martirano v Frost*, 25 NY2d 505; *Black v Green Harbour Homeowners' Assn., Inc.*, 19 AD3d 962; *Vodopia v Ziff-Davis Publ. Co.*, 243 AD2d 368; *Lieberman v Hoffman*, 239 AD2d 273; *Officemax Inc. v Cinotti*, 966 F Supp 2d 74; *Kenny v Cleary*, 47 AD2d 531; *Orenstein v Figel*, 677 F Supp 2d 706.) II. Third-party plaintiff failed to state a claim for tortious interference with business relations. (*Carvel Corp. v Noonan*, 3 NY3d 182; *Posner v Lewis*, 18 NY3d 566.)

**OPINION OF THE COURT**

Abdus-Salaam, J.

This appeal requires this Court to answer the open question of whether statements made by attorneys prior to the commencement of litigation are privileged. We hold that such statements are protected by a qualified privilege. If the statements are pertinent to a good faith anticipated litigation, no cause of action for defamation can be based on those statements.

I

Defendant/third-party plaintiff Philip Khalil was employed as director of engineering for plaintiff Front, Inc. (Front), an American architectural and engineering design and consulting firm, from June 2003 through March 2011. During his employment, Khalil, a citizen of the United Kingdom, applied for and obtained resident alien status. Front sponsored Khalil's application. In March 2011, Khalil orally resigned from his position at Front, informing the firm that he intended to take a position with defendant Eckersley O'Callaghan Structural Design (EOC), a United Kingdom firm and one of Front's competitors. Khalil subsequently tendered a written letter of resignation to Front.

Shortly thereafter, an engineer employed by Front observed an external hard drive connected to Khalil's work computer. Upon investigation, Front allegedly discovered that Khalil had downloaded to the device the firm's entire network drive directory, which allegedly included all projects Front worked on, client contact information, and other proprietary information. Front confronted Khalil, who apparently admitted that he had intended to save Front's files to his hard drive. Front immediately terminated Khalil's employment. Upon further investigation, Front allegedly discovered that Khalil worked on approximately 40 side projects for Front's competitors, including EOC, in violation of the terms of his employment contract. Front also asserted that Khalil, with assistance from defendant James O'Callaghan, diverted work away from Front to EOC—namely, a project for the Apple Store on Broadway in New York City.

Front retained Meister Seelig & Fein LLP (MSF), and, in April 2011, Jeffrey A. Kimmel, an MSF attorney, sent a letter to Khalil. The letter stated that Khalil attempted to steal Front's confidential and proprietary information, that he conducted an illegal competing side business which unlawfully diverted business opportunities from Front, misappropriated trade secrets, and violated applicable ethical and professional codes of conduct as well as the duty of loyalty owed to Front. Additionally, the letter stated that Khalil may be subject to punishment under the Economic Espionage Act of 1996, stating in a footnote that he "violated the terms of [his] application and immigrant status" and "several codes of conduct and ethics of the various boards of licensure and professional associations to which [he is] a member." The letter demanded, among other things, that Khalil cease and desist from using Front's confidential and proprietary information, return the proprietary information he had taken, and refrain from contacting Front's clients.

Thereafter, Kimmel sent a letter to O'Callaghan and EOC, enclosing and referencing the earlier letter to Khalil, and stating that Khalil conspired with EOC to breach his fiduciary duty to Front, that EOC was aware that Khalil was a full-time employee of Front, and that EOC was diverting business away from Front to itself. The letter made demands that were nearly identical to those made in the letter to Khalil. Kimmel copied O'Callaghan and Brian Eckersley, EOC partners, on the letter.

After Khalil and EOC failed to comply with Front's demands, Front commenced an action against Khalil, O'Callaghan, and

EOC. As to all defendants, Front sought damages for claims including civil conspiracy, misappropriation of trade secrets, and common-law unfair competition. As to Khalil, Front asserted causes of action for breach of contract, the implied covenant of good faith and fair dealing, and fiduciary duty.

Khalil commenced a third-party action against Kimmel and MSF, asserting a cause of action for libel per se based upon the statements made by Kimmel in his April 2011 letter to Khalil. Specifically, Khalil asserted that the allegations made in the letter were expressed as "statement[s] of fact, not based upon information and belief or otherwise qualified in any manner." Additionally, Khalil alleged interference with a prospective business relationship, and tortious interference with business relations. Khalil, O'Callaghan, and EOC collectively moved to dismiss the complaint, pursuant to CPLR 3211 (a) (5) and (7) and CPLR 3016 (b), on the ground that it was time-barred, failed to state a cause of action, and lacked the requisite specificity. Kimmel and MSF moved to dismiss the third-party complaint for failure to state a cause of action.

As concerns this appeal, Supreme Court, New York County determined "that the letter to Khalil is absolutely privileged" and that it therefore did "not need to reach the question of malice," citing First Department precedent as support. (*Front, Inc. v Khalil*, 2012 NY Slip Op 31404[U], *24 [2012].) The court reasoned that the letter to Khalil "clearly relate[d] to the litigation initiated by Front" and "the demands made in the letters to Khalil and to O'Callaghan and EOC . . . substantially reflect the causes of action and relief requested" in the main action. (2012 NY Slip Op 31404[U], *23.) The court added: "The fact that the litigation was not initiated until approximately six months after the letters were sent does not alter the court's conclusion." (2012 NY Slip Op 31404[U], *23-24.) Khalil appealed, and Front cross-appealed.

The Appellate Division upheld the dismissal of the third-party action against Kimmel and MSF, concluding that "an absolute privilege attaches to the statements made by [Front]'s counsel in the April 2011 letters, because they were issued in the context of 'prospective litigation' " (*Front, Inc. v Khalil*, 103 AD3d 481, 483-484 [2013], citing *Sexter & Warmflash, P.C. v Margrabe*, 38 AD3d 163, 174 [1st Dept 2007]; *Vodopia v Ziff-Davis Publ. Co.*,

243 AD2d 368, 368 [1st Dept 1997]). This Court granted Kahlil's motion for leave to appeal.[1]

## II

Commencing with this Court's 1897 decision in *Youmans v Smith* (153 NY 214 [1897]), we have held that absolute immunity from liability for defamation exists for oral or written statements made by attorneys in connection with a proceeding before a court "when such words and writings are material and pertinent to the questions involved" (*id.* at 219). There we stated that to allow such statements to be a basis for a defamation action "would be an impediment to justice, because it would hamper the search for truth and prevent making inquiries with that freedom and boldness which the welfare of society requires" (*id.* at 220). We also noted that where an attorney's statements are "so needlessly defamatory as to warrant the inference of express malice" the privilege has been abused and "protection is withdrawn" (*id.*). Nearly a century later in *Park Knoll Assoc. v Schmidt* (59 NY2d 205 [1983]), this Court held that relevant statements made in judicial or quasi-judicial proceedings are afforded absolute protection so that those discharging a public function may speak freely to zealously represent their clients without fear of reprisal or financial hazard (*see id.* at 209). The privilege attaches to such statements irrespective of an attorney's motive for making them (*see Wiener v Weintraub*, 22 NY2d 330, 331 [1968]).

Although it is well-settled that statements made in the course of litigation are entitled to absolute privilege, this Court has not directly addressed whether statements made by an attorney on behalf of his or her client in connection with prospective litigation are privileged. Three Appellate Division Departments, however, have addressed this issue directly and have come to differing conclusions. The First Department has held that an absolute privilege attaches to statements made by an attorney in connection with prospective litigation (*Sexter & Warmflash*, 38 AD3d at 174 ["a letter among parties and counsel on the subject of pending or prospective litigation . . . enjoys the protection of the absolute privilege"]; *Vodopia*, 243 AD2d at 368 [absolute privilege applied to "a letter written . . . during the course of negotiations to settle a copyright lawsuit threatened by plaintiff's client"]; *Lieberman v Hoffman*, 239 AD2d 273, 273

---

1. The Appellate Division order is final as against Kimmel and MSF.

[1st Dept 1997]). Although the Second Department had held in *Kenny v Cleary* (47 AD2d 531, 532 [2d Dept 1975]) that absolute privilege did not apply to statements made prior to litigation, it has recently held in *Sklover v Sack* (102 AD3d 855, 856 [2d Dept 2013]) that statements made pertinent to a settlement of a prospective malpractice litigation were afforded an absolute privilege. In contrast to the First and Second Departments, the Third Department has held that a statement made prior to litigation should not be afforded absolute privilege (*Uni-Service Risk Mgt. v New York State Assn. of School Bus. Officials*, 62 AD2d 1093, 1094 [3d Dept 1978] [the "statement was made before the commencement of (the) (a)ction . . . and thus an absolute privilege did not attach"]).

Alternatively, a statement is "subject to a qualified privilege when it is fairly made by a person in the discharge of some public or private duty, legal or moral, or in the conduct of his [or her] own affairs, in a matter where his [or her] interest is concerned" (*Rosenberg v MetLife, Inc.*, 8 NY3d 359, 365 [2007] [internal quotation marks omitted]). In general, if the privilege is "qualified, it can be lost by plaintiff's proof that defendant acted out of malice" (*Park Knoll*, 59 NY2d at 209).

### III

■ The rationale supporting the application of privileged status to communication made by attorneys during the course of litigation is also relevant to pre-litigation communication. When litigation is anticipated, attorneys and parties should be free to communicate in order to reduce or avoid the need to actually commence litigation. Attorneys often send cease and desist letters to avoid litigation. Applying privilege to such preliminary communication encourages potential defendants to negotiate with potential plaintiffs in order to prevent costly and time-consuming judicial intervention. Communication during this pre-litigation phase should be encouraged and not chilled by the possibility of being the basis for a defamation suit.

Nonetheless, "[a]s a matter of policy, the courts confine absolute privilege to a very few situations" (*Park Knoll*, 59 NY2d at 210). We recognize that extending privileged status to communication made prior to anticipated litigation has the potential to be abused. Thus, applying an absolute privilege to statements made during a phase prior to litigation would be problematic and unnecessary to advance the goals of encouraging communication prior to the commencement of litigation. To

ensure that such communications are afforded sufficient protection the privilege should be qualified. Rather than applying the general malice standard to this pre-litigation stage, the privilege should only be applied to statements pertinent to a good faith anticipated litigation. This requirement ensures that privilege does not protect attorneys who are seeking to bully, harass, or intimidate their client's adversaries by threatening baseless litigation or by asserting wholly unmeritorious claims, unsupported in law and fact, in violation of counsel's ethical obligations.[2] Therefore, we hold that statements made prior to the commencement of an anticipated litigation are privileged, and that the privilege is lost where a defendant proves that the statements were not pertinent to a good faith anticipated litigation.

## IV

The letters at issue here were written in the preliminary stages of an anticipated action. MSF and specifically Kimmel, acting on behalf of their client Front, sent a letter to Khalil informing him of Front's investigation in an attempt to avoid litigation by requesting, among other things, that Khalil return the allegedly stolen proprietary information and cease and desist his use of that information. A copy of that letter was then forwarded to EOC. Thus, at the time the letters were sent, Kimmel and MSF had a good faith basis to anticipate litigation and the statements in the letters were pertinent to that anticipated litigation. Therefore, the letters at issue were properly found to be subject to a privilege; however, rather than the absolute privilege applied by the courts below, a qualified privilege applied because they were written prior to litigation. Nevertheless, because the letters are privileged the third-party action was properly dismissed.

Accordingly, the Appellate Division order should be affirmed, with costs.

Chief Judge LIPPMAN and Judges READ, PIGOTT and RIVERA concur; Judges STEIN and FAHEY taking no part.

Order affirmed, with costs.

---

2. In holding that privilege applies to these pre-litigation statements, we note that attorneys should exercise caution when corresponding with unrepresented potential parties who may be particularly susceptible to harassment and unequipped to respond properly even to appropriate communications from an attorney.