NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 17-2737 and 17-3254
_____

VLADKA KOCH, individually; *EUROVID FKK; *HELIOS NATURA;
*EUROPA DOCU-SEARCH, S.R.O.; *EUROVIDFKK, S.R.O.,

Appellant

v.

VRATISLAV PECHOTA, JR., Esq., individually; LAW OFFICE OF
VRATISLAV PECHOTA JR, Esq.; JEFFREY A. HELEWITZ, individually

*Dismissed pursuant to Clerk's Order dated 8/25/17.
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. Action No. 3-16-cv-3637)
District Judge: Honorable Brian R. Martinotti
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
April 20, 2018
_____

Before: GREENAWAY, JR., RENDELL, and FUENTES, *Circuit Judges*.

(Opinion Filed: July 30, 2018)

_____
OPINION[**]
_____

_____

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

GREENAWAY, JR., *Circuit Judge*.

Vladka Koch appeals the District Court's denial of her motion to conduct jurisdictional discovery (No. 17-2737) and the subsequent dismissal of her complaint (No. 17-3254). For the reasons set forth below, we will affirm.

## I. BACKGROUND

This case has a long and tortured history, beginning with the relationship between Vladka and Robert Koch, and involving multiple state and federal court cases.[1] Beginning in 1991, the Kochs were business partners, establishing and operating an "enterprise . . . composed of several interdependent Czech and USA business entities" that "promot[ed] naturism (nudism) through various media and actions worldwide."[2] App. 32-33 (footnote omitted). Ms. Koch, a citizen of the Czech Republic, and Mr. Koch, a United States citizen, resided in the Czech Republic before and after their marriage in 2000. That same year, the Kochs retained Vratislav Pechota, Jr., Esq. and the Law Office of Vratislav Pechota, Jr., Esq. (collectively, "Pechota") as immigration counsel to apply for and obtain legal permanent resident ("LPR") status for Ms. Koch. In 2002, Ms. Koch obtained conditional status as an LPR, which would expire in two years.

---

[1] Some of the prior litigation occurred in: *Koch v. Pechota*, 1:10-cv-09152 –RWS (S.D.N.Y.); *Koch v. Sheresky,* Index No. 112337/2007 (Sup. Ct. New York County); and *Koch v. Koch*, Index No. 1805/2004 (Sup. Ct. Westchester County).

[2] The Kochs established Europa Docu-Search, Inc.; Eurovid, Inc.; Eurovid FKK; Helios Natura; Europa Docu-Search s.r.o.; and EurovidFKK, s.r.o. These business entities were joint plaintiffs with Ms. Koch, but were voluntarily dismissed from the appeal.

2

In 2003, Mr. Koch separated from Ms. Koch and moved to the United States where he successfully sued her for divorce in the Supreme Court of New York. That court, however, vacated the divorce decree in May 2007 due to, among other things, Mr. Koch's fraudulent misrepresentations to the court. In 2008, Ms. Koch was awarded custody of their child, sole ownership of their business entities, child support, alimony/spousal support, and $25 million to be paid by Mr. Koch.

In June 2007, in the Supreme Court of New York, Ms. Koch sued various attorneys for fraud and malpractice allegedly committed during the divorce proceedings ("State Action"). Pechota, while not a defendant in the State Action, was deposed as a fact witness. In 2012, Jeffrey A. Helewitz was appointed as a Special Referee in the State Action. Among other duties, Helewitz supervised the depositions of Pechota and Ms. Koch.

In 2010, Ms. Koch sued Pechota for malpractice in the Supreme Court of New York. Pechota removed the case to the United States District Court for the Southern District of New York ("S.D.N.Y. Action"). After years of discovery disputes, mostly revolving around the attempts to depose Ms. Koch, the S.D.N.Y. Action was dismissed on the eve of trial. Ultimately, because Ms. Koch did not complete her deposition in the case, the District Judge would not permit her to testify at trial. Ms. Koch's counsel conceded, absent Ms. Koch's testimony, he had no evidence that would show the alleged malpractice fell within the three-year statute of limitations. Ms. Koch moved to vacate the order dismissing the S.D.N.Y. Action pursuant to Federal Rule of Civil Procedure

3

60(b)(2) and (b)(3). The motion was denied because Ms. Koch, rather than submitting new evidence, simply repeated allegations regarding the impact of the depositions on her health. Specifically, she referenced "the 'unsuitable behavior of the defendants'" as a reason for her "worsened medical condition." Opinion re: Motion to Vacate at 5, *Koch v. Pechota*, 1:10-cv-09152-RWS Doc. 477 (S.D.N.Y. Dec. 22, 2014). The Second Circuit affirmed the original dismissal as well as the denial of the motion for reconsideration. The Supreme Court of the United States denied certiorari. *Koch v. Pechota*, 588 F. App'x 72 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 138 (2015); *Koch v. Pechota*, 632 F. App'x 24 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 48 (2016).

On June 22, 2016, Ms. Koch (along with her business entities) filed a complaint in the District of New Jersey naming Pechota and Helewitz as defendants. After Pechota and Helewitz filed motions to dismiss, Ms. Koch filed an amended complaint asserting thirteen claims.[3] The claims, in short, alleged Pechota and Helewitz injured Ms. Koch

---

[3] The claims are: 1) negligence; 2) intentional and reckless conduct; 3) injurious falsehoods; 4) slander per se; 5) intentional and/or negligent infliction of emotional distress and physical disability; 6) violation of civil rights by Helewitz only, under 42 U.S.C. § 1983; 7) negligent misrepresentation or fraud and deceit; 8) future medical expenses; 9) aiding and abetting the commission of tort; 10) indivisible harm caused by separate tortfeasors; 11) attorney malpractice; 12) violation of New York Judiciary Law § 487; and 13) punitive damages. The causes of action Ms. Koch sets forth against Pechota can be grouped into four categories. The first category, psychological injury, comprises the first, second, fifth, sixth, eighth, eleventh, and twelfth causes of action in the complaint. Ms. Koch alleges the injury is a result of Pechota's conduct in the S.D.N.Y. Action; specifically, Ms. Koch alleges his conduct in the first part of her deposition caused her to be unable to finish the deposition. The second category is fraudulent misrepresentations, comprising the seventh, ninth, and twelfth causes of action in the complaint. Ms. Koch alleges Pechota presented fraudulent misrepresentations to

psychologically by Helewitz's misconduct in the State Action and Pechota's misconduct in her depositions in the S.D.N.Y. Action. This injury, she alleges, caused her inability to participate in the trial, which led to the dismissal of the case, thereby also injuring her monetarily. The complaint also alleged Pechota and Helewitz injured her monetarily by lying to the court and causing it to rule against her.

Pechota and Helewitz filed new motions to dismiss. Pechota filed a 12(b)(6) motion to dismiss for failure to state a claim for which relief can be granted and Helewitz filed a 12(b)(2) motion to dismiss for lack of personal jurisdiction. Ms. Koch then filed a motion seeking jurisdictional discovery, which Pechota and Helewitz opposed. On July 31, 2017, the District Court denied the motion, finding jurisdictional discovery unwarranted. Ms. Koch filed an interlocutory appeal.[4]

On September 28, 2017, the District Court granted both motions to dismiss. Ms. Koch timely appealed. We consolidated the appeals.

---

the court in the S.D.N.Y. Action. The third category is damages, comprising the tenth and thirteenth causes of action in the complaint. Damages claimed relate back to the psychological injury. The fourth category is slander, comprising the third and fourth causes of action in the complaint. Ms. Koch alleges Pechota's slanderous statements caused monetary damages.

[4] Pechota argues that this Court lacks jurisdiction over the appeal of the discovery order, but since "interlocutory orders merge into the final judgment and may be challenged on appeal from that judgment," *In re Diet Drugs*, 418 F.3d 372, 377 (3d Cir. 2005), the subsequent appeal of the final order and consolidation of the two cases render this argument without merit. Jurisdiction over the order denying jurisdictional discovery is based on the general rule that an "appeal from a final judgment draws in question all prior non-final orders and rulings which produced the judgment." *Elfman Motors, Inc. v. Chrysler Corp.*, 567 F.2d 1252, 1253 (3d Cir. 1977).

## II. JURISDICTION

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

We have jurisdiction pursuant to 28 U.S.C. § 1291.

## III. STANDARD OF REVIEW

We exercise plenary review over a district court's grant of a 12(b)(2) motion to

dismiss for a lack of personal jurisdiction, *Metcalfe v. Renaissance Marine, Inc.*, 566

F.3d 324, 329 (3d Cir. 2009), and of a 12(b)(6) motion to dismiss for failure to state a

claim for which relief can be granted, *Ditri v. Coldwell Banker Residential Affiliates,*

*Inc.*, 954 F.2d 869, 871 (3d Cir. 1992). We review the District Court's denial of a motion

for jurisdictional discovery for an abuse of discretion. *Toys "R" Us, Inc. v. Step Two,*

*S.A.*, 318 F.3d 446, 455 (3d Cir. 2003).

## IV. DISCUSSION

### A. All Motions to Dismiss were Unopposed

Before the District Court, Ms. Koch did not oppose Pechota's or Helewtiz's

motions to dismiss. Instead, she moved for jurisdictional discovery to establish personal

jurisdiction over Helewitz. Although the District Court observed it "could grant the

motions as unopposed without analyzing the merits of Pechota . . . and Helewitz's

arguments," App. 10, the District Court nonetheless addressed the merits of the motions

to dismiss.[5]

---

[5] In her reply brief, Ms. Koch argues, for the first time, that the District Court erred by failing to issue a scheduling order on the issue of her "request for timing of her

6

**B. Helewitz's Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction**

When a district court is sitting in diversity, it "may assert personal jurisdiction over a nonresident defendant to the extent allowed under the law of the forum state." *Metcalfe*, 566 F.3d at 330; *see also* Fed. R. Civ. P. 4(k). New Jersey's long-arm statute "provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing N.J. Court Rule 4:4-4(c)). Therefore, New Jersey courts look to federal law to interpret the limits on personal jurisdiction. *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998).

The Supreme Court has identified two types of personal jurisdiction: specific and general. A court has specific jurisdiction when the suit "arises out of or relate[s] to the defendant's contacts with the forum." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923-24 (2011) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, n. 8 (1984)) (internal alterations omitted). However, a court has general jurisdiction, even if the underlying controversy did not take place in the forum state, when a defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 564

---

response to . . . Rule 12 motions." Appellant's Reply Br. 11. We need not address this argument, however, because it is well-settled law that "[a]s a general matter, an appellant waives an argument in support of reversal if it is not raised in the opening brief." *Garza v. Citigroup Inc.*, 881 F.3d 277, 284 (3d Cir. 2018) (quoting *In re Asbestos Prod. Liab. Litig. (No. VI)*, 873 F.3d 232, 237 (3d Cir. 2017)).

7

U.S. at 919 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)).

Ms. Koch does not assert that specific jurisdiction exists over Helewitz, nor could she since all of Helewitz's alleged actions occurred in New York. Instead, she argues that the District Court had general jurisdiction over Helewitz. She bases her assertion of general jurisdiction on two allegations made in the complaint. First, she claims that various third parties sell, in New Jersey, books and other publications written or prepared by Helewitz. Second, she alleges that Helewitz teaches continuing legal education ("CLE") classes to New Jersey attorneys, but does not specify where these classes are taught. Neither of these allegations demonstrate that Helewitz himself had any contact with New Jersey, despite Koch's argument that these alleged facts show Helewitz had continuous and systematic contact with New Jersey. At best, the allegations show that third parties had contact with New Jersey when they sold Helewitz's CLE materials there. As the District Court decision correctly explained, even if Helewitz had such contacts with New Jersey, Koch's theory of general jurisdiction over Helewitz was flawed because it relied on his continuous and systematic *business activities* as a CLE instructor.

General jurisdiction based on business activities is only used to determine where corporate entities can be considered "at home." *Goodyear*, 564 U.S. at 924. Consideration of business activities to find general jurisdiction has not been applied to individuals. To achieve general jurisdiction over an individual or corporation, affiliations with the forum state must be "so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127

8

(2014) (quoting *Goodyear*, 564 U.S. at 919). The rule enunciated by the Supreme Court subjects a corporation to general jurisdiction beyond its headquarters because corporations can be "at home" in many places. However, an individual is "at home" where they are domiciled—in other words, an individual's "true, fixed and permanent home and place of habitation. It is the place to which, whenever he is absent, he has the intention of returning." *McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir. 2006) (quoting *Vlandis v. Kline*, 412 U.S. 441, 454 (1973)). Helewitz did not reside in New Jersey. Teaching CLE classes does not make him "at home" in New Jersey.

Therefore, to the extent that Ms. Koch believes her requested jurisdictional discovery would disclose that Helewitz taught CLE classes in New Jersey, learning that information would not support a claim of personal jurisdiction. The District Court, in its denial of the motion for jurisdictional discovery, did not abuse its discretion in determining that further discovery would be futile. We will also affirm the District Court's order granting the motion to dismiss for lack of personal jurisdiction over Helewitz.

## C. Pechota's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim for which Relief Can be Granted

In his motion to dismiss, Pechota asserts numerous bases for dismissal. The District Court analyzed all of Pechota's arguments. Since "[w]e may affirm a judgment on any ground apparent from the record, even if the district court did not reach it," *Williams v. Sec'y, Pa. Dep't of Corr.*, 848 F.3d 549, 572 (3d Cir. 2017) (quoting

*Kabakjian v. United States*, 267 F.3d 208, 213 (3d Cir. 2001), we will limit our review to two arguments—*res judicata* and litigation privilege—since these principles dispose of all of Ms. Koch's allegations. That is, with the exception of the slander claim, all the remaining claims made against Pechota were raised and resolved in the S.D.N.Y. Action, thus precluding their resolution here. The slander claim is barred by the principle of litigation privilege.

**1. Res Judicata**

"A fundamental precept of common-law adjudication . . . is that a 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies. . . .'" *Montana v. United States*, 440 U.S. 147, 153 (1979) (quoting *S. Pac. R.R. Co. v. United States*, 168 U.S. 1, 48-49 (1897)). Within this larger doctrine, there are two sub-doctrines: claim preclusion and issue preclusion. *Id.* Under claim preclusion, sometimes referred to as res judicata, once there is a final judgment on the merits, the parties are barred from bringing further claims based on the same cause of action. *Id.* Under issue preclusion, sometimes referred to as collateral estoppel, once a court has actually and necessarily determined an issue, it is conclusive on subsequent suits involving a party to the prior litigation even if based on different causes of action. *Id.*

The District Court found that an application of claim preclusion was warranted because "[a]ll of the claims in this litigation arise from the same events that gave rise to the SDNY Action, or they took place in the SDNY Action." App. 14-15. On appeal, Ms.

10

Koch argues that the claims brought before the District Court could not have been raised in the S.D.N.Y. Action because they are "related to Mr. Pechota's behavior *during* the Southern District action." Appellant's Br. 27. While we agree with Ms. Koch that the causes of action arise from a different occurrence and therefore are not barred by claim preclusion, we will still affirm the dismissal because all of the issues raised were already resolved by the adjudication of the S.D.N.Y. Action. *Williams*, 848 F.3d at 572 ("[w]e may affirm a judgment on any ground apparent from the record, even if the district court did not reach it.").

Ms. Koch argues that the S.D.N.Y. Action "did not pass upon any of the facts alleged in the instant action" and that it only ruled on the "basis of *the statute of limitations*." Appellant's Br. 27. While it is true that the case was ultimately decided on that basis, Ms. Koch fails to mention the vast number of hearings, orders, and opinions produced in the S.D.N.Y. Action which do, indeed, "pass upon . . . the facts alleged in the instant action." Consequently, the claims in Ms. Koch's complaint are collaterally estopped by issue preclusion.

To determine the collateral effect of prior judgments, the court must ask whether "an issue of fact or law [has been] actually litigated and determined by a valid and final judgment, and the determination [was] essential to the judgment." *Nat'l R.R. Passenger Corp. v. PA Pub. Util. Comm'n*, 288 F.3d 519, 525 (3d Cir. 2002) (quoting Restatement (Second) of Judgments § 27 (Am. Law Inst. 1980)). This inquiry delineates four prerequisites: (1) the issue is the same as the one in the prior action; (2) the issue was

11

actually litigated; (3) a final and valid judgment determined the issue; and (4) that determination was essential to the judgment in the prior action. *Id.* Here, each of the prerequisites is satisfied.

First, with the exception of the slander claim,[6] the issues here were all raised in the S.D.N.Y. Action as part of the discovery disputes and other pretrial motions.[7] In the S.D.N.Y. Action, Ms. Koch's attorneys argued that her inability to complete her deposition was caused by Pechota's conduct. Her attorneys also claimed Pechota lied to the court in the S.D.N.Y. Action by making false statements about what had happened in the deposition. These are the same issues that are being brought before this Court. In fact, Ms. Koch attempted to revive her discovery disputes in the S.D.N.Y. Action by filing a Rule 60(b) motion, in which she argued she had "new evidence" that her deposition triggered her psychological injury. In denying the 60(b) motion, the District Judge observed, "[n]ot only was the issue of [Ms. Koch]'s medical and psychological condition litigated at length in general, but the allegation that the depositions impacted [Ms. Koch]'s ability to attend trial was explicitly provided to the Court as a basis for one

---

[6] As discussed later, these claims will be dismissed because Pechota's statements are protected by litigation privilege.

[7] Although most of the orders and opinions from the S.D.N.Y. Action were not included in the pleadings to the New Jersey District Court, this Court may consider them as they are "integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis omitted) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)). Further, they are judicial decisions and matters of public record, and therefore may be considered by the court. *Maiden Creek Assocs., L.P. v. U.S. Dept. of Transp.*, 823 F.3d 184, 189 (3d Cir. 2016).

of [Ms. Koch]'s adjournment requests." Opinion re: Motion to Vacate at 4, *Koch v. Pechota*, 1:10-cv-09152-RWS Doc. 477 (S.D.N.Y. Dec. 22, 2014). The District Judge also stated that "[n]or has [Ms. Koch] established by clear and convincing evidence that [Pechota] ha[s] engaged in misconduct." *Id.* at 5. Furthermore, the District Judge stated in an opinion that even if "her illness had been established by competent evidence, which it has not, the condition was in no way caused by the actions of [Pechota]." Opinion at 15, *Koch v. Pechota*, 1:10-cv-09152-RWS Doc. 440 (S.D.N.Y. Nov. 11, 2013).

Second, these issues not only arise out of the S.D.N.Y. Action, but they also were actually litigated there. The District Judge in the S.D.N.Y Action held numerous pretrial hearings on Ms. Koch's psychological condition during which he examined evidence and arguments offered by Ms. Koch. There are hundreds of pages of transcripts from these hearings, in which Ms. Koch's and Pechota's attorneys litigated these exact issues.[8] The allegation that Pechota presented "lies" and "fraudulent misrepresentations" to the District Judge in the S.D.N.Y. Action simply reflects Ms. Koch's displeasure in the

---

[8] Ms. Koch's attorneys did not bring any of the orders, transcripts, and opinions issued in the S.D.N.Y. Action to the attention of either this Court or the District Court in New Jersey. This failure borders on an attempt to intentionally mislead this Court and the District Court in New Jersey in furtherance of Ms. Koch's efforts to relitigate issues already decided. While we will assume the failure to provide these materials, along with counsels' actions in this case, were based on their efforts to zealously represent their client, we find it necessary to remind counsel of their duty of candor to the Court. This duty includes not only bringing relevant facts and cases to the Court's attention, but also avoiding the filing of frivolous litigation. *See* N.J. R.P.C. 3.3 (setting forth requirement that counsel disclose material facts and relevant legal authority to the court) and N.J. R.P.C. 3.1 (prohibiting counsel from bringing frivolous claims). We do not find the present case so baseless as to be completely frivolous, but we note it comes quite close.

13

District Judge's decisions, all of which were affirmed by the Second Circuit. Ms. Koch cannot obtain additional review of these decisions by filing a new case in the District of New Jersey.

Third, there were final and valid judgments on the issues. The District Judge in the S.D.N.Y Action ruled on discovery motions relating to Ms. Koch's deposition and issued a number of opinions constituting final and valid judgments. A review of the docket of the S.D.N.Y. Action reveals there were approximately twenty hearings, over fifteen orders (not including scheduling and other non-substantive orders), and six judicial opinions. These rulings determined the issues Ms. Koch attempted to bring before the New Jersey District Court.

Fourth, the aforementioned determinations were essential to the adjudication of the S.D.N.Y. Action. Ms. Koch argues that dismissal on statute of limitations grounds was not a decision on any of the causes of actions brought in the present action. We disagree. In dismissing the action as barred by the statute of limitations, the District Judge in the S.D.N.Y. Action considered Ms. Koch's claims of psychological injury in the deposition and Pechota's alleged lies to the court. Ms. Koch claimed her psychological injury was such that she was unable to finish her deposition. The District Judge necessarily had to conclude these claims were not supported by evidence in order to rule that without a completed deposition, Ms. Koch's testimony would be precluded. This conclusion was essential to the final decision because Ms. Koch's attorneys conceded that, absent her testimony, they could provide no evidence showing the alleged

14

malpractice fell within the statute of limitations. Therefore, these factual and legal determinations were essential to the dismissal of the S.D.N.Y. Action.

Since all four requirements for demonstrating issue preclusion are satisfied, we will affirm the District Court's decision in dismissing counts one, two, five and seven through thirteen.

## 2. Litigation Privilege

The District Court dismissed Ms. Koch's claims for slander and injurious falsehood as barred by litigation privilege. Ms. Koch specifically complained of Pechota's association of her video businesses with child pornography in depositions and court proceedings in the S.D.N.Y. Action.[9] We will affirm.

Attorneys have absolute privilege to "publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the

---

[9] In reviewing the record in the S.D.N.Y. Action, the only mention of child pornography this Court could find was made by Ms. Koch's counsel in connection with a motion in limine seeking a protective order prohibiting Pechota "from expressing any negative comments or linking naturism or Ms. Koch's way of life to sexual or pornographic activities." First Motion in Limine at 2, *Koch v. Pechota*, 1:10-cv-09152-RWS Doc. 380 (S.D.N.Y. Sep. 6, 2013). During argument on that motion, Ms. Koch's counsel stated that the reference to child pornography was "raised in deposition and we expect it fully to come out at trial." Transcript of Proceedings re: Conference at 25, *Koch v. Pechota*, 1:10-cv-09152-RWS Doc. 465 (S.D.N.Y. Dec. 19, 2013). This Court has reviewed the deposition transcripts and found no mention of child pornography. Furthermore, the affirmation in support of the motion in limine cites Pechota's reference to the Kochs' video businesses as being "involved in the adult film production business," but provides no citation or record reference for the accusation that Koch's counsel made regarding Pechota's alleged statements regarding child pornography. Reply Affirmation in Support of Motion for Summary Judgment, *Koch v. Pechota*, 1:110-cv-09152-RWS, Doc. 371, (S.D.N.Y. Aug. 20, 2013).

institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding." Restatement (Second) of Torts § 586 (Am. Law Inst. 1977). The precise scope of litigation privilege is determined by state law. Because this Court is sitting in diversity jurisdiction, we must apply the choice-of-law rules of New Jersey as the forum state. *Berg Chilling Sys., Inc.v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Here, the District Court concluded there was no conflict between New York and New Jersey law. The parties do not challenge that conclusion.

New Jersey and New York's litigation privilege is absolute. *Peterson v. Ballard*, 679 A.2d 657, 659 (N.J. Super. Ct. App. Div. 1996); *Martirano v. Frost*, 255 N.E.2d 693, 694 (N.Y. 1969). This privilege extends to defamatory statements as long as they have some relation to the proceedings. *Hawkins v. Harris*, 661 A.2d 284, 288 (N.J. 1995); *see also Martirano*, 255 N.E.2d at 694 ("a statement made . . . in the course of a judicial proceeding is absolutely privileged if, by any view or under any circumstances, it may be considered pertinent to the litigation."). New Jersey and New York define pertinence or relevance to a proceeding in a broad sense, rather than on the basis of "technical legal relevancy." *Hawkins*, 661 A.2d at 290 (quoting *Fenning v. S.G. Holding Corp.*, 135 A.2d 346, 350 (N.J. Super. Ct. App. Div. 1957)); *see also Martirano*, 255 N.E.2d at 694. The privilege's broad scope is motivated by the same policy in both states, "to encourage parties to litigation, as well as counsel and witnesses, to speak freely in the course of judicial proceedings." *Martirano*, 255 N.E.2d at 695; *see also Loigman v. Twp. Comm.*

16

*of Twp. of Middletown*, 889 A.2d 426, 435-36 (N.J. 2006). Because both states provide absolute litigation privilege, it affords immunity from liability regardless of motive—so that even if a party acted out of malice his or her statements are protected. *Park Knoll Assocs. v. Schmidt*, 451 N.E.2d 182, 184 (N.Y. 1983); *see also Front, Inc. v. Khalil*, 28 N.E.3d 15, 18 (N.Y. 2015).

In applying the absolute litigation privilege, the District Court correctly concluded Pechota's alleged statements referring to Ms. Koch's businesses as child pornography were protected. Both New Jersey and New York include within litigation privilege any statement made in judicial or quasi-judicial proceedings that have some pertinence to the litigation, applying a flexible—rather than technical—definition of pertinent. *Martirano*, 255 N.E.2d at 695; *Loigman*, 889 A.2d at 435-36. Before the District Court, Ms. Koch claimed Pechota equated her video businesses with child pornography. Ms. Koch argues the decision of the District Court should be remanded for factual determinations; however, this is unnecessary. Even if Pechota's alleged statements mischaracterized or inaccurately described the videos, the videos are relevant to the litigation. All that is needed for the protection of litigation privilege is a "general frame of reference and relationship to the subject matter of the action." *Hawkins*, 661 A.2d at 290 (quoting *Fenning*, 135 A.2d at 350). Furthermore, the policy behind litigation privilege, to encourage parties to speak unencumbered by the fear of civil litigation, applies here. *Martirano*, 255 N.E.2d at 695; *Loigman*, 889 A.2d at 435-36. Pechota's alleged statements, therefore, are protected by the litigation privilege.

17

## V. CONCLUSION

For the foregoing reasons, we will affirm the District Court's order granting Pechota and Helewitz's motions to dismiss. We will also affirm the District Court's denial of the motion for jurisdictional discovery.